**JOHNSON CONTROLS, INC.,**
**Defendant Below,**
**Appellant,**

v.

**Adrian FIELDS, Plaintiff**
**Below, Appellee.**

**No. 387, 1999.**

Supreme Court of Delaware.

Submitted: June 20, 2000.
Decided: July 28, 2000.

J.R. Julian, Esquire, Wilmington, Delaware, for Appellant.

Joseph W. Weik, Esquire, Weik, Nitsche & Dougherty, Wilmington, Delaware, for Appellee.

Before VEASEY, Chief Justice, WALSH, and HOLLAND, Justices.

**PER CURIAM:**

This is an appeal from a Superior Court decision affirming the Industrial Accident Board's (the "Board") award of partial disability benefits. The Superior Court ruled that forfeiture of permanent partial compensation benefits could not be implied where an employee is terminated for cause. We agree that, in the absence of clear statutory authority, there can be no forfeiture of benefits for lost earning capacity. Accordingly, we affirm.

## I

Adrian Fields ("Fields") began working for the appellant, Johnson Controls, Inc. ("Johnson Controls"), in September 1988. Fields injured his lower back on August 3, 1993, when he tried to prevent a barrel of lead from tipping over. He immediately felt pain in his lower back that radiated down his right leg. Shortly after his injury, Fields went to his family physician, Dr. Ma, who advised him to rest, take medication, avoid lifting and bending and, at least temporarily, to perform only light duty work.

Pursuant to company policy, Fields also reported to Johnson Controls' company physician, Dr. Feldstein, on August 9, 1993. The following day, however, Fields was disciplined for failing to bring required documentation from Dr. Feldstein's office to the plant. Fields had been disciplined several times during his employment with Johnson Controls for excessive absences, tardiness and failure to perform his job. As a result of these disciplines, Fields was in the "final stages" of Johnson Controls' progressive disciplinary process at the time of his injury. Under that policy, any further disciplinary action could result in termination of Fields' employment.

On August 18, 1993, Johnson Controls' Human Resources Manager, Gloria Luzzato ("Luzzato") met with Fields. Luzzato confronted Fields with the fact that he had failed to keep an appointment with Dr.

Feldstein on August 16, 1993. Fields explained that he did not believe that he was required to keep the appointment because he was already back to work. Luzzato nevertheless issued him a document indicating that he was being disciplined for failure to follow a direct order and failure to keep a scheduled appointment with the company doctor as required by company policy. On August 23, 1993, Johnson Controls discharged Fields for insubordination in accordance with its disciplinary policy. Despite Fields' termination, he met again with Dr. Feldstein on August 23, 1993 for a follow-up appointment.

Johnson Controls tendered an agreement with the Board agreeing to compensation for Fields for a period of total disability for the time period spanning August 4, 1993 through August 15, 1993. Johnson Controls then tendered another compensation agreement that placed Fields back on temporary total disability beginning August 18, 1993. The parties, however, did not file the agreements with the Board until after they resolved a dispute over Fields' average weekly wage at the time of his injury.

On November 13, 1993, Johnson Controls filed a petition for review of the compensation agreement covering the period of disability that began on August 18, 1993. The Board granted the petition with Fields' consent on November 2, 1994. Fields then filed a petition to determine additional compensation due, alleging entitlement to ongoing partial disability from November 4, 1994 to the present.

The Board conducted a hearing on April 24, 1996. Fields' treating neurologist, Dr. Kamsheh, testified that he continued to place work restrictions on Fields, including restrictions on lifting, frequent bending and extended standing. Johnson Controls' neurologist, Dr. Townsend, testified that he had diagnosed Fields with chronic lumbosacral sprain. The Board denied Fields' petition for partial disability. While holding that Fields had physical limitations and reduced earning capacity, the Board found

that he could work a medium-duty job within the restrictions imposed by his treating physician. The Board further ruled that, but for Fields' failure to follow Johnson Controls' policies, he would have been able to work at Johnson Controls without any loss of earning capacity under a light duty assignment.

Fields appealed the Board's decision to the Superior Court. The reviewing court ruled, in effect, that Fields' discharge for cause did not result in a forfeiture of benefits related to lost earning capacity. The court remanded the matter to the Board to determine the amount of benefits. Upon remand, the Board did not conduct another hearing, but granted Fields' petition for permanent partial disability benefits effective November 4, 1994. Johnson Controls appealed that decision to the Superior Court which, in turn, affirmed the Board's award of benefits. This appeal followed.

## II

Johnson Controls contends that Fields forfeited his right to partial disability benefits when he was fired for insubordination and, thus, his diminished earning capacity resulted from his own misconduct, not as a result of his injury. Johnson Controls further argues that, even if this Court finds that Fields did not forfeit his benefits, this case should be remanded for a hearing on his post-injury earning capacity because the Board failed to afford it the opportunity to present evidence at a rehearing following the remand from the Superior Court.

Fields responds that his discharge was directly related to his compensable work-related injury because he was fired for failing to attend a medical examination scheduled for him by Johnson Controls when he had already returned to work. In any event, he argues, his entitlement to benefits for lost earning capacity could not, as a matter of law, be forfeited by his subsequent conduct.

### III

■ "This Court, replicating the role of the Superior Court, reviews the Board's decision to determine whether its factual findings are supported by substantial evidence." *Turbitt v. Blue Hen Lines, Inc.*, Del.Supr., 711 A.2d 1214, 1215 (1998). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, Del.Supr., 636 A.2d 892, 899 (1994). When the issue on appeal is whether or not proper legal principles have been applied, this Court's review is *de novo*. *See E.I. Du Pont De Nemours & Co., Inc. v. Shell Oil Co.*, Del.Supr., 498 A.2d 1108, 1113 (1985).

■ The general rule in Delaware is that an employee who is partially disabled due to a work-related accident is entitled to compensation. *See* 19 *Del. C.* § 2325. An injured employee, however, may under limited circumstances, forfeit entitlement to compensation. *See* 19 *Del. C.* § 2353. Section 2353 outlines three instances in which forfeiture of benefits may be invoked: (i) if the employee refuses reasonable surgical, medical services, medicines and supplies offered by the employer; (ii) if the employee is intoxicated at the time of his injury or otherwise wilfully fails to follow the safety instructions of the employer or to perform a duty required by statute; and (iii) if the employee refuses employment suitable to the employee's capacity that was procured by the employer. *See id.* In each situation, the employer has the burden of proving a factual basis for forfeiture. *See id.*

■ In the present case, none of the statutorily enumerated bases for forfeiture of benefits apply. First, Fields did not fail to accept medical services provided by Johnson Controls. Although Fields missed an appointment with Dr. Feldstein which resulted in his dismissal, he did keep several other appointments with Dr. Feldstein, even after Johnson Controls dismissed him. Second, Fields was not intoxicated at the time of his injury, nor is there any indication in the record that he wilfully failed to follow safety guidelines. Although it can be argued that Fields failed to follow the workers' compensation statute when he did not keep his appointment with Dr. Feldstein, the record indicates that his failure to attend was not wilful. Fields specifically told Luzzato that he thought he did not have to go because he was already back to work. Finally, although Johnson Controls argues that Fields refused work by virtue of his misconduct and subsequent firing, Fields did continue to seek work on his own and was employed at a lower rate of pay. Therefore, under the express terms of the statute, Fields did not forfeit his entitlement to compensation.

■ Nor are we persuaded that forfeiture of workers' compensation benefits should, as a matter of policy, be implied. It is well settled in Delaware that the provisions of the Workers' Compensation Act are to be liberally construed to effectuate the statute's intended goal of compensation to the injured employee. *See Histed v. E.I. Du Pont De Nemours & Co.*, Del.Supr., 621 A.2d 340, 342 (1993). The entitlement to benefits accrues to the injured employee at the time of the accident or event that causes injury. To the extent that injury results in a permanent impairment of bodily condition, the entitlement to benefits is fixed, subject to later evaluation of the extent of the impairment and the earnings capability of the employee. *See Peters v. Chrysler Corp.*, Del.Supr., 295 A.2d 702, 704 (1972). To permit the employer to claim a forfeiture of compensation through its disciplinary process works a deprivation of benefits already fixed at the time of injury. The employer is of course free to discharge an employee for cause under its disciplinary system; but it cannot thereby transfer the legislatively determined process for the payment of

workers' compensation, in the absence of express statutory authority.*

Finally, Johnson Controls contends that regardless of whether Fields forfeited his benefits, this case should be remanded for a new hearing on his earning capacity pursuant to the express terms of the Workers' Compensation Act. This argument, however, must be rejected because the parties stipulated at the initial hearing as to Fields' remedial earning capacity. Indeed, the extent of Fields' earning capacity ultimately determined by the Board was greater than that originally agreed to by the parties.

### IV

In sum, we hold that forfeiture for lost earning capacity of workers cannot be implied where an employee is terminated for cause. Accordingly, we affirm the judgment of the Superior Court.

---

* In an analogous context, the General Assembly has recognized the effect of discharge for cause in authorizing the forfeiture of unemployment compensation benefits in the event of a justified discharge. *See* 19 *Del. C.* § 3315(2).