Norman BETTS, Claimant
Below, Appellant,

v.

TOWNSENDS, INC., Employer
Below, Appellee.

No. 10, 2000.

Supreme Court of Delaware.

Submitted: Oct. 31, 2000.
Decided: Dec. 5, 2000.

John J. Schmittinger, Walt F. Schmittinger, (argued), Schmittinger and Rodriguez, P.A., Dover, Delaware, for appellant.

Jeffrey M. Austin, (argued), Scott A. Simpson, Elzufon & Austin, P.A., Wilmington, Delaware, for appellee.

Before VEASEY, Chief Justice, WALSH, and BERGER, Justices.

WALSH, Justice:

In this appeal from the Superior Court, appellant/claimant-below, Norman Betts, ("Betts") argues that the Industrial Accident Board ("IAB" or the "Board") was barred by either *res judicata* or collateral estoppel from revisiting the issue of causation in regard to his Petition for Permanent Partial Disability Benefits in light of the Board's previous determination that Betts suffered a compensable work-related injury. We conclude, based on the facts before us, that neither collateral estoppel nor *res judicata* precluded the Board from reconsidering causation as it pertained to Betts' second petition for benefits. Accordingly, we affirm the Superior Court's decision.

I

In June 1995, Betts injured his right knee when he was involved in an industrial accident while employed by Townsends, Inc. ("Townsends"). Betts fell approximately three feet and landed on the medial aspect of his right knee after he lost his balance. Thereafter, Betts was examined by Dr. Edward F. Quinn, an orthopedic surgeon who later performed arthroscopic surgery on Betts' right knee on August 25, 1995 to determine the source of his continuing pain and discomfort. Due to the surgery, Betts was unable to work from August 25, 1995 to August 30, 1995. Prior to the 1995 accident, Betts had never experienced any problems with his right knee.

In February 1997, Betts filed a Petition to Determine Compensation Due for his total disability during the period he was unable to work because of the surgery. Betts also sought medical payments for a total knee replacement he claimed would be necessary in the future. A hearing was held before the Board on October 31, 1997. At the hearing, Dr. Quinn, testifying on behalf of Betts stated that the arthroscopic surgery revealed "moderate medial femoral condyle degenerative arthritis without significant tibial arthritis." According to Dr. Quinn, this arthritis was confined to the area of the knee Betts injured in the accident. Dr. Quinn believed the degenerative joint disease in Betts' knee was caused by the accident. In Dr. Quinn's opinion, the injury required total knee replacement surgery.

Dr. Jerry L. Case, a board certified orthopedic surgeon, testified on behalf of Townsends. Dr. Case opined that it is common for a sixty-three year old man to suffer moderate degenerative joint disease of the medial femoral condyle. Contrary to Dr. Quinn, Dr. Case felt the degenerative arthritis in the knee was mild. More

importantly, Dr. Case believed the degenerative arthritis pre-existed the date of the accident and that the accident may have aggravated Betts' degenerative symptoms but did not cause his condition. Furthermore, Dr. Case stated that the degenerative "arthritis could not have developed over such a short period of time because there was no defect in the knee itself that would lead to the arthritis." Dr. Case testified that the arthritis was the result of wear and tear and was not caused by the 1995 accident. Finally, Dr. Case did not believe that a total knee replacement was inevitable, whether or not the fall at work had occurred.

The Board determined Betts was totally disabled for the period of August 25, 1995 through August 30, 1995, and it also granted compensation for related medical expenses. The Board, however, found knee replacement surgery to be unnecessary and unrelated to the work accident. On this issue, the Board believed the work injury did not warrant future surgery.

Subsequently, on August 25, 1998, Betts filed a Petition to Determine Additional Compensation Due seeking benefits for a claimed 10% permanent impairment to his right knee. Dr. Stephen Rogers, board certified in occupational medicine, testified on behalf of Betts. Dr. Rogers found no degeneration of the right knee prior to the June 1995 accident based on Betts' records and X-rays. Dr. Rogers opined that the accident "was sufficient to make Claimant's degenerative condition symptomatic or to cause an entirely new injury." Dr. Rogers stated that Betts' arthritis was caused by trauma because it is located on only one side of the knee, the medial aspect. According to Dr. Rogers, if the arthritis was the result of aging "the entire joint would be affected."

Dr. Case again testified on behalf of Townsends. Dr. Case stated that the arthritis was likely caused by wear and tear because it is found in the weight bearing portion of the knee. Dr. Case believed the accident did not cause Betts' degenerative joint disease. Dr. Case stated that the "degenerative changes in Claimant's knee were present prior to the work accident and would have progressed to Claimant's present condition irrespective of the work accident" because "such symptoms are expected in a man with Claimant's arthritic condition and would likely be present" whether the accident occurred or not.

The Board rejected Betts' Petition for Permanent Partial Disability Benefits. The Board accepted the opinion of Dr. Case over that of Dr. Rogers and determined that there was no causal connection between the 1995 accident and Betts' permanent impairment. The Board found that Betts' symptoms were a product of his age and arthritic condition and would be present even if the 1995 accident never occurred.

## II

Betts argues the Board was precluded, based on its prior decision that the 1995 accident rendered Betts temporarily totally disabled, from revisiting the issue of causation as it related to his Petition for Permanent Partial Disability. Generally, this Court's review of a decision of the Board is limited to a determination of whether there is substantial evidence to support the Board's findings. See *Johnson Controls Inc. v. Fields*, Del.Supr., 758 A.2d 506, 509 (2000). Whether the IAB was barred by *res judicata* or collateral estoppel from deciding the issues presented at Betts' second IAB hearing, however, raises a question of law that this Court reviews *de novo*. See *Oceanport Ind., Inc. v. Wilmington Stevedores, Inc.*, Del.Supr., 636 A.2d 892, 899 (1994). We conclude, based on the facts of this case, that neither *res judicata* nor collateral estoppel barred the Board from reconsidering the issue of causation as it related to Betts' subsequent claim for Permanent Partial Disability.

In its ruling following the first hearing, the Board found, based on Dr. Quinn's testimony, that Betts had suffered a com-

pensable injury as a result of the 1995 accident and that the degenerative joint disease present in Betts' knee was related to the 1995 accident. Specifically, the Board stated that "Claimant had a punctate type area of degeneration which is consistent with a one time trauma as opposed to a diffuse degenerative change." In so finding, the Board rejected the testimony of Dr. Case that Betts' degenerative joint disease was preexisting and unrelated to the 1995 accident since it is common in a man of Betts' age.

In its decision rejecting Betts' claim for permanent partial disability benefits, the Board determined, on the basis of Dr. Case's testimony, that the injury caused by the 1995 accident had resolved. Moreover, the Board found that any permanent condition in Betts' knee would be present irrespective of the accident and is related solely to Betts' underlying arthritic condition. In contrast to its earlier finding, the Board found that the arthritis in Betts' knee, based on its location, is typical of an individual of Betts' age and was induced by wear and tear rather than trauma relating to the 1995 accident. In short, the Board declined to attribute the claimed permanent condition to the causation linked to the earlier temporary problem.

## III

■ Under the doctrine of *res judicata*, a party is foreclosed from bringing a second suit based on the same cause of action after a judgment has been entered in a prior suit involving the same parties. *See M.G. Bancorporation, Inc. v. Le Beau*, Del.Supr., 737 A.2d 513, 520 (1999). Similarly, where a court or administrative agency has decided an issue of fact necessary to its decision, the doctrine of collateral estoppel precludes relitigation of that issue in a subsequent suit or hearing concerning a different claim or cause of action involving a party to the first case. *See Messick v. Star Enter.*, Del.Supr., 655 A.2d 1209, 1211 (1995). Essentially, *res judicata* bars a court or administrative agency from reconsidering conclusions of law previously adjudicated while collateral estoppel bars relitigation of issues of fact previously adjudicated. *See M.G. Bancorporation*, 737 A.2d at 520 ("[T]he collateral estoppel doctrine is referred to as the issue preclusion rule.").

### A.

■ Under 19 *Del.C.* § 2347, the Board has statutory authority to review a prior agreement or award "on the ground that the incapacity of the injured employee has subsequently terminated, increased, diminished or recurred or that the status of the dependent has changed. . . ." Where the Board is asked to reconsider the incapacity or status of a claimant based on one of these specifically delineated changes in circumstances, the doctrine of *res judicata* is inapplicable. *See Harris v. Chrysler Corp.*, Del.Supr., 541 A.2d 598, Horsey, J., (April 8, 1988) (ORDER) (stating that "the doctrine of *res judicata* is not a bar to the board's exercise of its authority conferred by 19 Del.C. § 2347 to review, modify, or terminate previous awards upon proof of subsequent change of condition"); *see also Atkinson v. Delaware Curative Workshop*, Del.Super., C.A. No. 98–02–012, 1999 WL 743447, Cooch, J., (May 19, 1999), *aff'd*, Del.Supr., 741 A.2d 1025 (1999) (same). *Res judicata* would, however, prevent the Board from reviewing the correctness of a prior award.* *See Taylor v. Hatzel & Buehler*, Del.Supr., 258 A.2d 905, 908 (1969) (stating that "[a] wards of compensation boards are generally held to be *res*

---

* For example, suppose the Board found that a claimant was involved in an industrial accident that caused permanent partial disability. Subsequently, the employer seeks to terminate benefits on the basis that the claimant is no longer permanently disabled. In that case, *res judicata* would prevent the Board from revisiting the issue of causation. Under § 2347, however, the Board would be free to reconsider whether the claimant remained permanently partially disabled because it has statutory authority to determine if the incapacity of the employee has subsequently terminated.

*judicata* and, thus, immune from collateral attack, except when the award for some reason is void").

■ Here, the Board initially determined in its 1997 decision that Betts' temporary total disability was caused by the 1995 accident. This conclusion cannot be subsequently revisited pursuant to the doctrine of *res judicata*. In 1999, the Board found that Betts was permanently partially disabled but concluded that the 1995 accident was not the cause of Betts' permanent condition. It is clear that the Board was presented with different claims at each hearing: a claim for temporary total disability and thereafter a claim for permanent partial disability. Because the Board was confronted with a different claim at each hearing it was not barred by the doctrine of *res judicata* from making a determination of causation as it pertained to Betts' Petition for Permanent Partial Disability. Therefore, we conclude that the doctrine of *res judicata* is inapplicable to the facts of this case.

### B.

■ Nor are we persuaded that the principle of collateral estoppel limits the scope of the Board's determination in this somewhat unique situation. To determine whether collateral estoppel applies to bar consideration of an issue, a court must determine whether:

(1) The issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*State v. Machin,* Del.Super., 642 A.2d 1235, 1239 (1993) (citing *United States v. Rogers,* 10th Cir., 960 F.2d 1501, 1508 (1992)). *See also Acierno v. New Castle County,* Del.Supr., 679 A.2d 455, 459 (1996). Only the first factor is applicable to the present dispute. Because we believe that the issue before the Board at the second hearing was not identical to the issue adjudicated at the first hearing, we conclude that collateral estoppel does not apply.

The issue before the Board at each hearing was separate and distinct. At the 1997 hearing, the Board found that the accident caused Betts' temporary total disability. The Board, based on Dr. Quinn's testimony, found that Betts "had a punctate type area of degeneration which is consistent with a one time trauma as opposed to a diffuse degenerative change." The Board also denied compensation for total knee replacement surgery because it believed the need for any such future surgery to be unrelated to the work accident. In contrast, at the 1998 hearing, the issue before the Board was whether the 1995 accident was the cause of Betts' partial permanent disability. The Board found that Betts' arthritis, based on its location in the knee, was attributable to his age and general wear and tear. The issue before the Board at the second hearing was not identical to that adjudicated in 1997. Whether an industrial accident caused temporary total disability or permanent partial disability are two totally distinct questions. Upon close analysis, the Board's findings in its 1999 decision do not contradict its earlier findings. Therefore, we conclude the doctrine of collateral estoppel did not preclude the Board from reconsidering the issue of causation as it related to Betts' claim for permanent partial disability.

The judgment of the Superior Court is AFFIRMED.