# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DAVID HAMILTON, | ) | |
| | ) | |
| Claimant-Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N16A-06-006 ALR |
| | ) | |
| INDEPENDENT DISPOSAL SERVICE, | ) | |
| | ) | |
| | ) | |
| Employer-Appellee. | ) | |

## MEMORANDUM OPINION

*Upon Employer's Motion to Strike*
**DENIED**

*On Appeal from the Industrial Accident Board*
**AFFIRMED**

Submitted: December 13, 2016
Decided: February 15, 2017

Kyle F. Dunkle, Esq., Schmittinger & Rodriguez, P.A., Dover, Delaware, Attorney for Claimant-Appellant.

Joseph Andrews, Esq., Hoffman Andrews Law Group, Dover, Delaware, Attorney for Employer-Appellee.

**ROCANELLI, J.**

# I. FACTUAL AND PROCEDURAL BACKGROUND

This is an appeal from the Industrial Accident Board ("Board"). Claimant-Appellant David Hamilton ("Claimant") appeals from the January 21, 2016 Board Decision denying Claimant's Petition to Determine Additional Compensation and the May 13, 2016 Board Decision denying Claimant's Motion for Reargument.

## A. Claimant's Work Accident; the 2003 Board Decision

On November 7, 2002, Claimant sustained a back injury while working as a laborer for Independent Disposal Service ("Employer"), a trash collection service. Claimant sustained the injury while attempting to empty a trashcan into a dump truck. Prior to the injury, Claimant did not suffer from back problems. By agreement dated November 21, 2002, effective November 8, 2002, Employer accepted Claimant's injury as work-related and compensable. Claimant was placed on total disability and began receiving workers' compensation benefits.

On February 5, 2003, Employer filed a Petition to Terminate Claimant's disability benefits. On June 9, 2003, the Board conducted a hearing on the merits of Employer's Petition to Terminate. By Order dated June 18, 2003, the Board granted Employer's Petition to Terminate in part ("2003 Board Decision").[1] The Board determined that Claimant's work injury no longer entitled Claimant to total

---

[1] *Hamilton v. Indep. Disposal Serv.*, No. 1222906 (Del. I.A.B. June 18, 2003).

1

disability benefits.[2]  Although the Board found that Claimant remained eligible for partial disability, the Board found that Claimant was able to return to work in a sedentary or light-duty capacity.[3]

Shortly after the 2003 Board Decision, Claimant and Employer entered into a modified agreement for partial disability benefits, effective July 12, 2003 ("Compensation Agreement").  Claimant received partial disability pursuant to the Compensation Agreement until April 2, 2009.[4]

## B.    Claimant's Surgery; the October 2015 Hearing

On December 5, 2014, more than twelve years after Claimant initially sustained his work injury, Claimant underwent an anterior lumbar fusion surgery to repair an annular tear to the L5-S1 disc of Claimant's spine ("Claimant's Surgery").  On March 3, 2015, Claimant filed a Petition to Determine Additional Compensation with the Board, seeking medical expenses and an additional period of total disability for Claimant's Surgery.  Employer accepted Claimant's Surgery as a reasonable and necessary medical procedure, but opposed Claimant's Petition for Additional Compensation on the grounds that Claimant's Surgery was unrelated to Claimant's work injury.

---

[2] *Id.* at 8.
[3] *Id.* at 8–9.
[4] Claimant received disability payments pursuant to the Compensation Agreement for 300 weeks, the maximum amount permitted by statute. 19 *Del. C.* § 2325.

On October 30, 2015, the Board conducted a hearing on the merits of Claimant's Petition for Additional Compensation ("October 2015 Hearing"). Claimant asserted two theories of recovery during the October 2015 Hearing. Claimant argued that (1) the L5-S1 annular tear that gave rise to Claimant's Surgery was related to Claimant's work accident; and (2) Employer's previous disability payments for the targeted treatment of Claimant's L5-S1 area constituted an implied agreement that Claimant's Surgery was compensable.

During the October 2015 Hearing, the Board considered the testimony of (1) Claimant; (2) Employer's expert Dr. Lawrence Piccioni, an orthopedic surgeon who reviewed Claimant's medical records and examined Claimant on behalf of Employer prior to the October 2015 Hearing; (3) Claimant's expert Dr. Ganesh Balu, a certified pain management and rehabilitation physician who began treating Claimant in 2003; (4) Claimant's expert Dr. James Zaslavsky, the orthopedic surgeon who performed Claimant's Surgery.

### i. Claimant's Testimony

Claimant testified that Claimant refrained from having back surgery until 2014 because Claimant is diabetic and has a history of high blood pressure. Claimant's health concerns prompted Claimant to undergo more conservative treatment methods, such as injections and physical therapy, until Claimant's back pain became too intense to tolerate. On December 5, 2014, Dr. James Zaslavsky

3

performed fusion surgery to repair an annular tear at the L5-S1 level of Claimant's spine.

Additionally, Claimant described a motor vehicle accident that occurred in December 2002, about one month after Claimant's work injury. Claimant testified that a small pickup truck struck Claimant while Claimant stood in his family's driveway. Claimant testified that Claimant fell onto the hood of the truck and punched his hand through the truck's windshield. Claimant eventually fell off the truck after Claimant became caught on a clothes line. Claimant testified that the motor vehicle accident did not aggravate Claimant's work injury.

### ii. Dr. Piccioni's Testimony

Upon conducting a physical examination of Claimant and reviewing Claimant's medical records, Employer's expert Dr. Piccioni opined that the L5-S1 tear that gave rise to Claimant's Surgery could not be related to Claimant's work accident to a reasonable degree of medical probability. Dr. Piccioni opined that Claimant's L5-S1 tear did not visualize until 2012. Dr. Piccioni noted numerous significant incidents in Claimant's medical records that occurred between Claimant's initial work injury in 2002 and the manifestation of Claimant's L5-S1 tear in 2012. Specifically, Dr. Piccioni discussed (1) a slip and fall incident in December 2002; (2) a motor vehicle accident in December 2002; (3) a slip and fall incident in February 2003; (4) an incident where Claimant aggravated his back

4

while carrying a microwave in August 2004; (5) an incident where Claimant aggravated his back while carrying a casket in May 2009; and (6) an incident where Claimant aggravated his back while bending over to pick up his grandson in September 2010.[5]

Dr. Piccioni testified that the diagnostic results immediately after Claimant's work accident indicated that Claimant's L5-S1 disc was normal.[6] In Dr. Piccioni's opinion, the L5-S1 area of Claimant's spine showed no significant irregularities until 2012, when a discogram revealed the annular tear. Dr. Piccioni noted the multiple intervening accidents between Claimant's work injury and the visualization of the L5-S1 tear. Although Dr. Piccioni testified that he could not pinpoint the exact etiology of Claimant's L5-S1 tear, Dr. Piccioni opined that Claimant's Surgery could be attributable to Claimant's intervening accidents or, more likely, simple wear and tear of the lumbar spine. Accordingly, Dr. Piccioni stated that the L5-S1 tear that gave rise to Claimant's Surgery could not be related to Claimant's work accident to a reasonable degree of medical probability.

---

[5] Piccioni Dep. at 12:11–20:7.

[6] Specifically, Dr. Piccioni discussed (1) a December 2002 lumbar spine MRI that showed Claimant's L5-S1 disc as normal; (2) a January 23, 2003 bone scan that showed Claimant's L5-S1 disc as normal; (3) a March 26, 2003 EMG that showed a generalized bulge in Claimant's L5 area, but showed Claimant's L5-S1 disc as normal; (4) and an October 27, 2003 discogram and CT scan that showed Claimant's L5-S1 disc as normal. Piccioni Dep. at 21:2–32:10.

5

### iii.    Dr. Balu's Testimony

Claimant's expert Dr. Balu opined that the L5-S1 tear that gave rise to Claimant's Surgery was related to Claimant's work accident.  On October 27, 2003, Dr. Balu conducted a diagnostic discogram and CT scan on the L3-4, L4-5, and L5-S1 areas of Claimant's spine. Dr. Balu testified that Claimant's initial diagnostic results revealed an annular tear at Claimant's L3-4 level, but that Claimant's L5-S1 disc appeared normal.

In June 2006, Dr. Balu began administering epidural injections to Claimant's spine in an effort to alleviate Claimant's back pain.  From 2006 to 2012, Dr. Balu administered twelve injections specifically targeted to Claimant's L5-S1 area.  Dr. Balu testified that Claimant's disability carrier applied payments for all but one of the L5-S1 injections. On September 6, 2012, Dr. Balu conducted an additional discogram and CT scan on Claimant.  The results revealed an annular tear to Claimant's L5-S1 disc.  Dr. Balu referred Claimant to Dr. James Zaslavsky to discuss Claimant's need for surgery.

During Dr. Balu's testimony, Claimant attempted to introduce several exhibits pertaining to Claimant's disability payments and Dr. Balu's billing procedures for workers' compensation cases.  Employer objected to the admission of Claimant's exhibits on the grounds that Employer did not receive proper notice that Claimant intended to argue that Employer's previous disability payments

6

created an implied agreement of compensability. Employer moved to exclude Claimant's theory and all related exhibits from the Board's consideration. The Board reserved decision on Employer's objection.

### iv. Dr. Zaslavsky's Testimony

Upon reviewing Claimant's medical records and conducting Claimant's Surgery, Claimant's expert Dr. Zaslavsky opined that the L5-S1 tear that gave rise to Claimant's Surgery was related to Claimant's work accident. Dr. Zaslavsky began treating Claimant in June 2014. Dr. Zaslavsky testified that initial testing indicated that Claimant suffered an annular tear, and that Claimant's pain derived from the L5-S1 or L5 nerve root. In Dr. Zaslavsky's opinion, Claimant's L5-S1 disc slowly began to deteriorate following Claimant's initial work injury in 2002. Dr. Zaslavsky compared Claimant's L5-S1 disc to a tire with a pinhole leak that became progressively worse until the disc collapsed. Dr. Zaslavsky explained that a disc may take as long as twelve years or more to deteriorate in certain circumstances.

Dr. Zaslavsky acknowledged that Claimant's L5-S1 disc did not show herniation or stenosis on MRI in 2002 or 2006. However, Dr. Zaslavsky explained that a collapsed disc often does not visualize immediately after an injury occurs. Additionally, Dr. Zaslavsky testified that Claimant failed to inform Dr. Zaslavsky that Claimant experienced intervening medical incidents between 2003 and 2014.

7

However, Dr. Zaslavsky opined that Claimant's intervening incidents were more likely to have aggravated Claimant's work injury rather than have caused an additional injury to the L5-S1 area.[7]

## C.     The January 21, 2016 Board Decision

By Order dated January 21, 2016, the Board denied Claimant's Petition for Additional Compensation.  The Board concluded that Claimant failed to establish that Claimant was entitled to compensation for Claimant's Surgery.[8]

As to Claimant's first theory of recovery, the Board concluded that Claimant failed to establish that the L5-S1 tear that gave rise to Claimant's Surgery was related to Claimant's work accident to a reasonable degree of medical probability.[9] The Board found that Employer's expert Dr. Piccioni provided the most credible and comprehensive testimony regarding the cause of Claimant's Surgery,[10] and that Claimant's experts Dr. Zaslavsky and Dr. Balu were less persuasive.[11] Moreover, the Board adopted Dr. Piccioni's conclusion that Claimant's L5-S1

---

[7] In support of his conclusion, Dr. Zaslavsky testified that Claimant's medical records reflected that Claimant's symptoms always returned to the same level after each of the alleged intervening incidents. Zaslavsky Dep. at 46:11–47:14. Moreover, Dr. Zaslavsky noted that the source of Claimant's pain did not change over the course of Claimant's treatment. *Id.*

[8] *Hamilton v. Indep. Disposal Serv.*, No. 1222906, at 37 (Del. I.A.B. Jan. 21, 2016).

[9] *Id.* at 32.

[10] *Id.* at 31.

[11] *Id.* at 28–30.

injury did not visualize until 2012.[12]  The Board noted that, by 2012, Claimant was involved in multiple intervening accidents[13] and had experienced additional years of ordinary wear and tear of the lumbar spine.[14]  Ultimately, the Board elected to credit Dr. Piccioni's opinion that Claimant's L5-S1 tear could not be associated to Claimant's work accident to the necessary degree of reasonable medical probability.[15]

As to Claimant's second theory of recovery, the Board found that Claimant failed to establish that Employer's previous disability payments for targeted treatment to Claimant's L5-S1 area created an implied agreement that Claimant's Surgery was compensable.[16] As an initial matter, the Board concluded that Claimant failed to provide adequate notice of this theory of recovery to Employer prior to the October 2015 Hearing.[17]  The Board found that Employer's lack of notice deprived Employer of a meaningful opportunity to mount an adequate defense, tender witnesses with knowledge of billing procedures, and prepare an effective cross-examination.[18]  Nevertheless, the Board proceeded to address Claimant's argument on the merits.

---

[12] *Id.* at 30–31.
[13] *Id.* at 31–32.
[14] *Id.* at 32.
[15] *Id.* at 28.
[16] *Id.* at 35–36.
[17] *Id.* at 34.
[18] *Id.* at 34–35.

The Board concluded that Claimant failed to establish the existence of an implied agreement for compensation of Claimant's Surgery.[19] The Board noted that Claimant's exhibits "included a vast amount of unbundled charges without specifying which level of the lumbar spine is being injected."[20] Furthermore, the Board noted that Dr. Balu could not provide definitive testimony that Claimant's medical records were forwarded to Claimant's insurance carrier with Claimant's medical bills attached.[21] The Board found that "the documents produced do not necessarily show that Dr. Balu's occasional L5-S1 injections, twelve over a six year period which started for years after the work accident, were identified clearly to Employer."[22] Ultimately, the Board rejected Claimant's theory of an implied agreement for compensability because Claimant failed to establish that Employer had knowledge that Employer's disability payments were specifically applied to the targeted treatment of Claimant's L5-S1 area.[23]

**D.    The May 13, 2016 Board Decision**

On February 15, 2016, Claimant filed a timely Motion for Reargument from the Board's January 26, 2016 Decision. Claimant asserted that the Board erred in finding that Employer had insufficient notice of Claimant's argument prior to the

---

[19] *Id.* at 36.
[20] *Id.* at 35.
[21] *Id.* at 35.
[22] *Id.* at 36.
[23] *Id.*

10

October 2015 Hearing. Additionally, Claimant contended that Employer had complete access to the payment history for Claimant's disability benefits. Accordingly, Claimant asserted that Employer should have anticipated that Claimant intended to argue that Employer's previous disability payments for targeted treatment of Claimant's L5-S1 area created an implied agreement of compensability for Claimant's Surgery. Claimant attached various exhibits in support of Claimant's Motion for Reargument.

By Order dated May 13, 2016, the Board denied Claimant's Motion for Reargument. The Board concluded that Claimant's additional exhibits did not constitute newly discovered evidence that would warrant a second hearing on the merits of Claimant's Petition for Additional Compensation.[24] Rather, the Board found that "[a]ll documents presented were in Claimant's possession and were subject to discovery prior to the hearing and in fact, most had been requested by Employer, but not produced."[25] Moreover, the Board concluded that "several exhibits attached to Claimant's motion do not actually support his assertions."[26] Rather, the Board found that Claimant's exhibits "actually contradict Claimant's assertion that Employer knew or should have known" that Employer made previous disability payments for targeted treatment of Claimant's L5-S1 area

---

[24] *Hamilton v. Indep. Disposal Serv.*, No. 1222906, at 6 (Del. I.A.B. May 13, 2016).
[25] *Id.*
[26] *Id.*

during Claimant's disability period.[27]   The Board concluded that Claimant made "sweeping statements in his Motion that are not supported by the evidence,"[28] and that most of Claimant's "tardily proceeded evidence does not support his claim regarding [Employer's] prior knowledge."[29]

### E.   Claimant's Appeal to this Court; Employer's Motion to Strike

On June 10, 2016, Claimant filed an appeal from the January 21, 2016, and May 1, 2016 Board Decisions to the Superior Court.  Claimant asserts that the Board committed legal error and abused its discretion by denying Claimant's Petition for Additional Compensation and Claimant's Motion for Reargument. Employer opposes Claimant's appeal.

On November 2, 2016, Employer filed a Motion to Strike various exhibits attached to Claimant's opening appellate brief.  Employer asserts that the challenged exhibits were not admitted into evidence during Board proceedings. Therefore, Employer asserts that the exhibits are not properly considered by this Court as part of the appellate record.  Claimant opposes Employer's Motion to Strike.

On December 13, 2016, the Prothonotary reassigned Claimant's appeal to this judicial officer for decision.

---

[27] *Id.* at 6.
[28] *Id.* at 7.
[29] *Id.* at 9.

## II.    DISCUSSION

On appeal from the 2016 Board Decisions, Claimant argues that (1) the Board erred by failing to adhere to the *res judicata* and collateral estoppel effects of the 2003 Board Decision; (2) the Board erred in refusing to find an implied agreement of compensability for Claimant's Surgery under a theory of payment by compulsion; and (3) the Board abused its discretion by finding that Employer's lack of notice amounted to a violation of Employer's right to due process, requiring the Board to refrain from considering certain evidence.

### A.    Standard of Review

On appeal from a Board decision, this Court's role is limited to determining whether the Board's conclusions are supported by substantial evidence and free from legal error.[30]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[31]  This Court reviews the Board's legal determinations *de novo*.[32]  "Absent errors of law, however, the standard of appellate review of the IAB's decision is abuse of discretion."[33]

---

[30] *Glanden v. Land Prep, Inc.*, 918 A.2d 1098, 1100 (Del. 2007); *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).

[31] *Foods v. Guardado*, 2016 WL 6958703, at *3 (Del. Nov. 29, 2016); *Olney v. Cooch*, 42 A.2d 610, 614 (Del. 1981).

[32] *Guardado*, 2016 WL 6958703, at *3; *Munyan v. Daimler Chrysler Corp.*, 909 A.2d 133, 136 (Del. 2006).

[33] *Glanden*, 918 A.2d at 1101 (citing *Digiacomo v. Bd. of Pub. Educ.*, 507 A.2d 542, 546 (Del. 1986)).

**B.    Employer's Motion to Strike**

Claimant requests this Court to consider certain exhibits in support of Claimant's theory of an implied agreement through payment by compulsion. Employer opposes the Court's consideration of these exhibits on the grounds that the exhibits are not part of the appellate record.    In support of Employer's contention, Employer notes that the exhibits in questions were not admitted into evidence during Board proceedings because the Board concluded that Employer had insufficient notice of Claimant's argument.    Employer asserts that statutory law prohibits the Superior Court from considering issues of fact that are outside the record on appeal.[34]    Employer argues that Claimant's exhibits are not part of the appellate record, and that this Court must exclude any facts and arguments derived from the exhibits from its consideration.

This Court recognizes the "basic tenet of appellate practice that an appellate court reviews only matters considered in the first instance by a trial court."[35]    It is well-established that "[o]nly questions fairly presented to the trial court may be presented for review . . . ."[36] The appellate record may include transcripts from related hearings, as well as materials that are not offered into evidence if the

---

[34] *See* 19 *Del. C.* § 2350(b) ("In case of every appeal to the Superior Court the cause shall be determined by the Court from the record, which shall include a typewritten copy of the evidence and the finding and award of the Board, without the aid of a jury.").

[35] *Delaware Elec. Co-op, Inc. v. Duphily*, 703 A.2d 1202, 1206 (Del. 1997).

[36] *Id.* (quoting Supr. Ct. R. 8).

materials were considered by the trial court and are necessary to the case's disposition on appeal.[37] Delaware courts adhere to a strong policy in favor of deciding cases on the merit as opposed to technical grounds.[38]

This Court disagrees with Employer's contentions regarding the narrowness of the appellate record in this case. Although Employer correctly notes that the Board found that Claimant's approach to the implied agreement argument amounted to a violation of Employer's due process,[39] the Board proceeded to consider Claimant's exhibits and address Claimant's argument on the merits.[40] Because Claimant presented this argument and supporting evidence to the Board for consideration during the October 2015 Hearing and in post-trial proceedings in connection with Claimant's Motion for Reargument, the exhibits are properly

---

[37] *Duphily*, 703 A.2d at 1207.

[38] *Keener v. Isken*, 58 A.3d 407, 409 (Del. 2013).

[39] *Hamilton v. Indep. Disposal Serv.*, No. 1222906, at 34 (Del. I.A.B. Jan. 21, 2016).

[40] *See, e.g., id.* at 35 ("The Board also notes that even if it were to consider Dr. Balu's testimony and the submitted billing it does not provide sufficient evidence to satisfy Claimant's burden here anyway."); *id.* at 36 ("This is not enough evidence to show that the carrier knew that it was paying for treatment to L5-S1."); *id.* ("Ultimately, the documents produced do not necessarily show that Dr. Balu's occasional L5-S1 injections, twelve over a six year period which started for years after the work accident, were identified clearly to Employer."); *Hamilton v. Indep. Disposal Serv.*, No. 1222906, at 6 (Del. I.A.B. May 13, 2016) ("Interestingly, the Board notes that the several exhibits attached to Claimant's motion do not actually support his assertions."); *id.* ("So the attached exhibit actually contradicts Claimant's assertion that Employer knew or should have known."); *id.* at 9 ("Yet even most of this tardily produced evidence does not support his claim regarding prior knowledge.").

before this Court on appeal.[41] Accordingly, Employer's Motion to Strike is denied. The Court will address the merits of Claimant's argument of an implied agreement under a theory of payment by compulsion.

**C.** **The Board's conclusion that Claimant failed to establish the necessary relationship between Claimant's L5-S1 injury and Claimant's work accident is supported by substantial evidence and free from legal error.**

It is well-established that the Board may reconcile competing medical testimony by crediting the opinion of one expert over another.[42] Where the Board elects to adopt one expert opinion over another, the adopted opinion constitutes substantial evidence for the purpose of appellate review.[43] This Court "does not sit as a trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions."[44] "[T]he sole function of the Superior Court, as is the function of [the Delaware Supreme Court] on appeal, is to determine whether or not there was substantial evidence to support

---

[41] *Cf. Duphily*, 703 A.2d at 1207 ("Had [Plaintiff] sought to present these materials during trial, or post-trial in connection with its motion for a new trial, and had they been considered by the trial court, it could be argued that they are properly before this Court. In the absence of any indication that the [arguments] were ever considered by the trial court, there is no authority for their consideration here.").

[42] *Whitney v. Bearing Const., Inc.*, 2014 WL 2526484, at *2 (Del. May 30, 2014); *Steppi v. Conti Elec., Inc.*, 2010 WL 718012, at *3 (Del. Mar. 2, 2010).

[43] *Munyan v. Daimler Chrysler Corp.*, 909 A.2d 113, 136 (Del. 2006); *Bacon v. City of Wilmington*, 2014 WL 1268649, at *2 (Del. Super. Jan. 31, 2014).

[44] *Christiana Care Health Servs. v. Davis*, 127 A.2d 391, 394 (Del. 2015); *Johnson*, 213 A.2d at 66.

16

the finding of the Board, and, if it finds such in the record, to affirm the findings of the Board."[45]

In this case, the Board found that Claimant failed to establish that the L5-S1 tear underlying Claimant's Surgery was related to Claimant's work accident.[46] The record reflects that this conclusion is supported by substantial evidence. Specifically, Employer's expert Dr. Piccioni testified that the series of evaluations following Claimant's work injury indicated that Claimant's L5-S1 disc was normal, and that Claimant's L5-S1 tear did not visualize until 2012. Dr. Piccioni noted that Claimant was involved in multiple intervening incidents that could have caused an additional injury to Claimant's L5-S1 disc. Because the annular tear that gave rise to Claimant's Surgery could be attributable to subsequent incidents or the regular deterioration of the lumbar spine, Dr. Piccioni opined that Claimant's Surgery could not be associated with Claimant's work accident to a reasonable degree of medical probability.

The record reflects that the Board accepted the testimony of Employer's expert as the most credible, comprehensive, and plausible theory of causation for Claimant's L5-S1 annular tear.[47] By accepting Dr. Piccioni's opinion, the Board made a permissible credibility determination in order to reconcile competing

---

[45] *Johnson*, 213 A.2d at 66.

[46] *Hamilton v. Indep. Disposal Serv.*, No. 1222906, at 32 (Del. I.A.B. Jan. 21, 2016).

[47] *Id.* at 31.

17

medical theories of causation.[48]  It is not the duty of this Court to weigh the evidence or make credibility determinations in the context of an administrative appeal.[49]  Rather, "[t]he function of reconciling inconsistent testimony or determining credibility is exclusively reserved for the Board."[50]

This Court is satisfied that the Board's conclusion that the L5-S1 injury that gave rise to Claimant's Surgery cannot be associated to Claimant's work accident to the necessary degree of medical probability is supported by substantial evidence. Accordingly, this factual determination must be affirmed.[51]

## D.    The Board did not err by failing to adhere to *res judicata* or collateral estoppel.

Claimant argues that the 2003 Board Decision constitutes a binding and conclusive determination that Claimant's work accident was the cause of Claimant's back injury.  Accordingly, Claimant asserts that the doctrines of *res judicata* and collateral estoppel preclude Employer from arguing that other incidents already considered by the Board may have caused Claimant's injury. Claimant asserts that the cause of Claimant's injury has been fully litigated and adjudicated by the Board prior to the October 2015 Hearing.  Accordingly,

---

[48] *See Whitney*, 2014 WL 2526484, at *2; *Steppi*, 2010 WL 718012, at *3.
[49] *Davis*, 127 A.2d at 394; *Johnson*, 213 A.2d at 66.
[50] *Simmons v. Delaware State Hosp.*, 660 A.2d 384, 388 (Del. 1995) (citing *Breeding v. Contractors—One—Inc.*, 549 A.2d 1102, 1106 (Del. 1988)); *Martin v. State*, 2015 WL 1548877, at *3 (Del. Super. Mar. 27, 2015).
[51] *Davis v. Mark IV Transp.*, 2011 WL 6392950, at *3 (Del. Dec. 19, 2011); *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1162 (Del. 2009).

Claimant argues that the Board erred in considering subsequent occurrences that suggested Claimant's L5-S1 tear was unrelated to Claimant's work accident.

The application of *res judicata* and collateral estoppel is a question of law that this Court reviews *de novo*.[52] In the context of an administrative appeal, *res judicata* prevents an administrative board from reconsidering previously adjudicated conclusions of law.[53] *Res judicata* operates to bar a claim where the following five elements are met:

(1) the original court had jurisdiction over the subject matter and the parties;

(2) the parties to the original action were the same as those parties, or in privity, in the case at bar;

(3) the original cause of action or the issues decided was the same as the case at bar;

(4) the issues in the prior action must have been decided adversely to the party in the case at bar; and

(5) the decree in the prior action was a final decree.[54]

Delaware follows a transactional approach to *res judicata*,[55] requiring the Court to "give weight to such considerations as whether the facts are related in

---

[52] *See RBC Capital Mkts., LLC v. Educ. Loan Tr. IV*, 87 A.3d 632, 639 (Del. 2014); *Peterson v. State*, 81 A.3d 1244, 1247 (Del. 2013); *Betts v. Townsends, Inc.*, 765 A.2d 531, 533 (Del. 2000).

[53] *Betts*, 765 A.2d at 534.

[54] *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 192 (Del. 2009) (quoting *Dover Historical Soc'y, Inc. v. City of Dover Planning Comm'n*, 902 A.2d 1084, 1092 (Del. 2000)); *Gamco Asset Mgmt. Inc. v. iHeartMedia Inc.*, 2016 WL 6892802, at *13 (Del. Ch. Nov. 29, 2016).

time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."[56] Moreover, the party asserting *res judicata* must show that an opposing party "neglected or failed to assert claims which in fairness should have been asserted in the first action."[57]

The related doctrine of collateral estoppel precludes parties from relitigating a previously adjudicated fact in a different cause of action involving a party to the first case.[58] Collateral estoppel does not only extend to issues decided by the Court, but also to issues decided by administrative agencies acting in a judicial capacity.[59] Collateral estoppel operates to bar a claim where (1) the issue previously decided is identical to the present issue; (2) the issue was fully adjudicated on the merits; (3) the party against whom the doctrine is invoked were parties to the litigation or in privity with party to the prior litigation; and (4) the

---

[55] *LaPoint*, 970 A.2d at 193.

[56] *Id.*

[57] *Grunstein v. Silva*, 2012 WL 3870529, at *1 (Del. Ch. Aug. 24, 2012) (quoting *LaPoint*, 970 A.2d at 193–194).

[58] *Messick v. Star Enter.*, 655 A.2d 1209, 1212 (Del. 1995); *Lewis v. Berkowitz & Shagrin, P.A.*, 2014 WL 4792994, at *2 (Del. Super. Sept. 25, 2014).

[59] *Crossan v. Travelers Ins. Co.*, 2015 WL 7345752, at *2 (Del. Nov. 17, 2015) (quoting *Messick*, 655 A.2d at 1211); *Naylor v. Taylor*, 1996 WL 658851, at *2 (Del. Super. Aug. 23, 1996).

party against whom the doctrine is raised had a full and fair opportunity to litigate the issue.[60]

This Court finds that the Board did not commit legal error by failing to adhere to the *res judicata* and collateral estoppel effects of the 2003 Board Decision. As an initial matter, the record reflects that the Board faced considerably different issues of law and fact in 2003 and 2016. In 2003, the Board reviewed Claimant's status as a disabled worker[61] and considered whether Claimant's work injury entitled Claimant to continue receiving total disability benefits.[62] In 2016, twelve years later, the Board considered the relationship between Claimant's L5-S1 injury and Claimant's work accident to determine whether Claimant's Surgery was compensable.[63] The 2016 Board Decisions did not invalidate predetermined issues of law or revisit the "correctness"[64] of the 2003 Board Decision. To the contrary, this Court finds that the 2016 Board Decisions resolved an entirely separate issue from Claimant's ability to return to work in 2003 i.e. whether the L5-S1 tear that gave rise to Claimant's Surgery in 2014 was related to Claimant's initial work accident to the necessary degree of medical probability.

---

[60] *Chemtura Corp. v. Certain Underwriters at Lloyd's*, 2016 WL 3884018, at *6 (Del. Super. Apr. 27, 2016) (citing *Betts*, 765 A.2d at 535).

[61] *Hamilton v. Indep. Disposal Serv.*, No. 1222906, at 6–10 (Del. I.A.B. June 18, 2003).

[62] *Id.*

[63] *See generally Hamilton v. Indep. Disposal Serv.*, No. 1222906, (Del. I.A.B. Jan. 21, 2016).

[64] *Betts*, 765 A.2d at 534.

Furthermore, *res judicata* does not operate to bar a claim unless the underlying facts of the claim are known or capable of being known at the time of the first action.[65] In this case, Employer's claim that Claimant's Surgery is unrelated to Claimant's work accident is predicated on facts that were unavailable to Employer in 2003. Specifically, Employer challenged Claimant's theory of causation during the October 2015 Hearing by raising subsequent intervening medial incidents and multiple years of wear and tear on Claimant's spine. The relevant factual developments between the 2003 Board Decision and Claimant's Surgery do not indicate that Employer has "neglected or failed to assert claims which in fairness should have been asserted in the first action."[66]

The 2016 Board Decisions found that the L5-S1 tear that gave rise to Claimant's Surgery could not be related to Claimant's work accident with the necessary degree of medical probability. This conclusion is neither inconsistent nor contradictory to the 2003 Board Decision. The 2016 Board Decisions did not invalidate the previous conclusion that Claimant's work accident resulted in a compensable work-related injury. Moreover, the 2016 Board did not revisit the

---

[65] *Aveta Inc. v. Bengoa*, 986 A,2d 1166, 1185 (Del. Ch. 2009) (citing *LaPoint*, 970 A.2d at 193–194).
[66] *Grunstein*, 2012 WL 3870529, at *1 (quoting *LaPoint*, 970 A.2d at 193–194).

central finding of the 2003 Board Decision: that Claimant was no longer eligible for total disability due to his capacity to return to work in 2003.[67]

This Court finds that the 2003 Board Decision did not preclude the 2016 Board from considering an alternative cause for the L5-S1 injury that gave rise to Claimant's Surgery. Rather, the factual and legal issues considered by the two Boards are distinct. Accordingly, Claimant fails to establish that the Board committed legal error by failing to adhere to *res judicata* or collateral estoppel.

### E. The Board's conclusion that Claimant failed to establish an implied agreement through payment by compulsion is supported by substantial evidence and free from legal error.

Claimant argues that the Board erred in finding that Employer's previous disability payments for the targeted treatment of Claimant's L5-S1 area did not form an implied agreement that Claimant's Surgery was related to Claimant's work accident. Claimant asserts that Employer made partial disability payments for Claimant's back treatment for over a decade after Claimant sustained the work injury in 2002. Claimant asserts that Employer's partial disability payments were applied to the targeted treatment of Claimant's L5-S1 area. Claimant argues that Employer consistently paid Claimant's medical bills for Claimant's L5-S1 treatment without ever indicating that Employer's compensation responsibilities

---

[67] *Hamilton v. Indep. Disposal Serv.*, No. 1222906, at 8 (Del. I.A.B. June 18, 2003).

23

were limited to certain areas of Claimant's back. In support of this argument, Claimant notes that the Compensation Agreement identifies Claimant's compensable work injury as a general "low back strain/sprain" without specifying a particular area of Claimant's spine.

Delaware law recognizes implied agreements between an employer and employee for the payment of workers' compensation benefits.[68] However, mere payment of medical expenses for a work-related injury is insufficient to establish an implied agreement for compensation under Delaware law.[69] Rather, the Delaware Supreme Court has held that the party seeking to recover under an implied agreement must establish that the employer made disability payments pursuant to an underlying "feeling of compulsion."[70] The existence of an implied agreement under a theory of payment by compulsion is a fact-specific inquiry that is conducted on a case-by-case basis.[71] "Thus, in an ordinary case where there is a dispute as to whether the carrier believed itself compelled to pay, the issue is

---

[68] *See Starun v. All Am. Eng'g Co.*, 350 A.2d 765, 767 (Del. 1975).

[69] *Tenaglia-Evans v. St. Francis Hosp.*, 2006 WL 3590385, at *3 (Del. Dec. 11, 2006) (citing *Starun.*, 350 A.2d 765 at 767).

[70] *Andreason v. Royal Pest Control*, 72 A.3d 115, 119 (Del. 2013); *Tenaglia-Evans*, 2006 WL 3590385, at *3.

[71] *See Andreason*, 72 A.3d at 120 ("In that *Starun* makes it clear that each case is bottomed on its own facts, the narrow issue before us is whether the facts of the instant case show that payment was made under a feeling of compulsion."); *New Castle Cty. v. Goodman*, 461 A.2d 1012, 1013 (Del. 1983); *Tyrell v. E.I. DuPont de Nemours & Co.*, 1996 WL 453341, at *2 (Del. Super. June 17, 1996).

resolved by the Board on the facts of the case, taking into account, obviously, all of the record evidence proffered and testimony adduced."[72]

In this case, the Board rejected Claimant's theory of an implied agreement because Claimant failed to establish that Employer knew that disability payments were applied to the targeted treatment of Claimant's L5-S1 disc.[73] This Court finds that the Board's conclusion on this issue is supported by substantial evidence and free from legal error.

As an initial matter, the record reflects that Employer could not have known that Claimant sustained an L5-S1 injury at the time Employer stipulated to the compensability of Claimant's work accident. Specifically, initial diagnostic testing immediately following Claimant's work accident revealed injuries to Claimant's L3-4 level, but showed that Claimant's L5-S1 disc was normal. The Board resolved competing medical testimony by accepting Dr. Piccioni's opinion that Claimant's L5-S1 injury did not visualize until 2012. The significant passage of time between Claimant's work accident and the visualization of Claimant's L5-S1 injury supports the Board's conclusion that Employer could not have agreed (or felt compelled) to provide compensation to Claimant for an injury to Claimant's L5-S1 area that did not appear until many years after Claimant's initial work

---

[72] *Andreason*, 72 A.3d at 122.

[73] *Hamilton v. Indep. Disposal Serv.*, No. 1222906, at 35–36 (Del. I.A.B. Jan. 21, 2016).

25

accident.  Rather, this Court agrees with Employer's contention that "[t]he most that can ever be said . . . is that Employer felt compelled to accept liability for L3-L4, as [this area] was found to be injured in 2003 within weeks from when Employer entered in the [Compensation Agreement]."[74] As the Board noted, "[t]hat L5-S1 disc degeneration, annular tear and foraminal stenosis is seen on an MRI twelve years later does not mean that it is related to the work accident and the Board does not find that it is."[75]

Furthermore, as the proponent of Claimant's Petition to Determine Additional Compensation, Claimant has the burden of proof to establish to the Board that Employer impliedly accepted Claimant's L5-S1 injury as work-related by making payments under a sense of compulsion.[76] This Court is satisfied that the record supports the Board's conclusion that Claimant failed to meet his burden. Aside from the mere payment for occasional injections to Claimant's L5-S1 area, Claimant failed to produce testimony or evidence demonstrating that Employer made disability payments with intent to accept Claimant's L5-S1 injury as work-related and compensable.  Moreover, Dr. Piccioni's competing testimony, which the Board credited as persuasive, "casts serious doubt on whether [the L5-S1]

---

[74] Employer's App. Br. at 26.

[75] *Hamilton v. Indep. Disposal Serv.*, No. 1222906, at 29 (Del. I.A.B. Jan. 21, 2016).

[76] 29 *Del. C.* § 10125(c).

injections were targeted."[77] Additionally, the Board noted, and this Court agrees, that Dr. Balu's billing statements were comprised of "a vast amount of unbundled charges without specifying which level of the lumbar spine is being injected."[78] Finally, the Board found that Dr. Balu could not provide a definitive conclusion that Claimant's medical records were forwarded to the carrier with Claimant's applicable billing statements attached.[79]

Upon consideration of Claimant's argument and supporting exhibits, this Court finds sufficient record evidence for the Board to have concluded that Claimant failed to establish that Employer knowingly made disability payments for the targeted treatment of Claimant's L5-S1 area under a sense of compulsion. Moreover, the record contains sufficient evidence to conclude that "the documents produced [by Claimant] do not necessarily show that Dr. Balu's occasional L5-S1

---

[77] *Hamilton v. Indep. Disposal Serv.*, No. 1222906, at 36 (Del. I.A.B. Jan. 21, 2016). Specifically, Dr. Piccioni testified that Dr. Balu's billing ledgers indicated that many of Claimant's L5-S1 injections were "caudal blocks" that "go up and down the epidural space." Piccioni Dep. at 65:7–8. Dr. Piccioni continued to explain that "when you do a caudal block, you're basically going in the space, and the reason you're doing that is you're low enough, you can into their – if he was going one level above and trying to do the same thing, he would go above the level and drip the medicine down, or below the level and drip it up, depending on the gravity." *Id.* at 67:16–24. Accordingly, Dr. Piccioni explained that administering a caudal block "doesn't mean you're doing it for L5-S1. You're doing it for any level that's hurting. So while you list it as L5-S1 as the space you went in to, that doesn't mean that's the space that's injured and that you're targeting, unless you read the body of the report." *Id.* at 69:5–11.

[78] *Hamilton v. Indep. Disposal Serv.*, No. 1222906, at 35 (Del. I.A.B. Jan. 21, 2016).

[79] *Id.*

27

injections, twelve over a six year period which started four years after the work accident, were identified clearly to Employer."[80] Accordingly, this Court finds that the Board's conclusion is supported by substantial evidence and must be affirmed.

**F.  The Court need not address whether the Board properly held that Claimant's failure to provide adequate notice deprived Employer of due process and a fair hearing.**

Claimant asserts that the Board committed an abuse of discretion by finding that (1) Claimant failed to provide proper notice of Claimant's theory of an implied agreement to Employer prior to the October 2015 Hearing; and (2) Claimant's failure to provide proper notice amounted to a violation of Employer's right to due process that required the Board to refrain from considering certain theories and exhibits.

Because Claimant's argument of an implied agreement has been fully considered and resolved by this Court on the merits, it is not necessary to consider whether the Board properly excluded certain evidence from its consideration in the proceedings below.[81]

---

[80] *Id.*

[81] *See Smith v. State*, 913 A.2d 1197, 1226 (Del. 2006) ("We decline to address whether the *Clayton* rule applies to defense counsel during opening statements and cross-examination because it is not necessary to our holding."); *Sierra Club v. Delaware Dep't of Nat. Res. & Env't Control*, 2015 WL 1548851, at *6 (Del. Super. Mar. 31, 2015) ("Because the Court concludes that the Coastal Zone Board does not have subject matter jurisdiction over the appeal, any legal conclusions regarding the issue of standing need not be considered by the Court"); *In re Career Educ. Corp. Derivative Litig.*, 2007 WL 2875203, at *11 (Del. Ch. Sept. 28, 2007)

**NOW, THEREFORE, this 15th day of February, 2017, Employer's Motion to Strike is hereby DENIED, and the January 21, 2016 Board Decision denying Claimant's Petition to Determine Additional Compensation and the May 13, 2016 Board Decision denying Claimant's Motion for Reargument are hereby AFFIRMED.**

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*

_____

**The Honorable Andrea L. Rocanelli**

---

("Resolution of the question of issue preclusion may render it unnecessary to address the merits of Plaintiffs' demand futility arguments. Accordingly, I begin by analyzing whether any of those arguments remains viable in the wake of the *McSparran* decision."); *id.* at *14 n. 85 ("Based on this conclusion, the Court need not address the merits of Plaintiffs' various demand futility arguments in this case."); *Beatty v. New Castle Cty. Bd. of Adjustment*, 1996 WL 111152, at *2 n.7 (Del. Super. Jan 31, 1996) ("The Court finds it unnecessary to address such argument further because substantial evidence exists to support the Board's decision . . . .").