**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

JOHN PURNELL,          )
                                       )

     Appellant,           )
                                         )

v.                               )      C.A. No. N16A-10-001 JRJ
                                         )

DEPARTMENT OF INSURANCE,    )
                                         )

     Appellee.            )

**OPINION**

Date Submitted: July 13, 2017
Date Decided: September 7, 2017

*Upon Appeal from the Delaware Insurance Commissioner's Final Decision and Order*: **AFFIRMED in part and REVERSED in part**.

John Purnell, *pro se*, P.O. Box 1456, Bear, DE, Appellant.

Jessica M. Willey, Esquire, Deputy Attorney General, Delaware Department of Justice, 841 Silver Lake Boulevard, Dover, DE, Attorney for Appellee.

**Jurden, P.J.**

The Delaware Department of Insurance ("Department"), under the authority of the Delaware Insurance Commissioner ("Commissioner"), administers and enforces Title 18, Chapter 43, Subchapter II of the Delaware Code relating to the regulation of bail bond agents. The Department filed a Complaint against John Purnell before the Commissioner alleging that Purnell and his bail bond company, Bail Bond Agency, Inc., violated certain provisions of the Delaware Insurance Code and no longer meet the criteria for issuance of a license. A Hearing Officer held a hearing and issued Recommended Findings, recommending that the Commissioner find that Purnell violated the Insurance Code and recommending that the Commissioner revoke Purnell's license. Ultimately, the Commissioner adopted the Hearing Officer's Recommended Findings. The Commissioner then revoked Purnell's license and imposed a fine.

Purnell now appeals the Commissioner's September 26, 2016 Final Decision and Order.[1] For the reasons set forth below, the Commissioner's Final Decision and Order is **AFFIRMED in part and REVERSED in part**.

---

[1] Record on Appeal ("R. on Appeal"), Ex. 10, Final Decision and Order ("Final Decision") (Trans. ID. 60007799); Notice of Appeal (Trans. ID. 59682368). Neither Bail Bond Agency, Inc. nor Purnell on the company's behalf filed an appeal of the Commissioner's Final Decision. Therefore, this appeal only concerns the Final Decision as it relates to Purnell.

## I. BACKGROUND

Purnell was a licensed bail agent in Delaware.[2] In June 2015, the Department examined a website, www.delawarebailbonds.com, that advertised an entity called "Delaware Bail Bonds."[3] The Department determined that the entity advertised on the website was related to Purnell and noticed that the website appeared to violate several provisions of the Insurance Code.[4]

Additionally, during 2014–15, in a separate investigation of multiple bail agents, the Department identified Purnell as the general agent of the bail agents under investigation.[5] Bankers Insurance Company ("Bankers") forwarded documentation to the Department indicating that Purnell and his sub-agents caused losses of more than $300,000 to Bankers.[6] By contract, Purnell was liable for those losses, but failed to pay.[7] The Department also determined that Bankers had obtained a $281,911.89 final judgment against Purnell.[8]

Following its investigation, the Department filed a Complaint against Purnell with the Commissioner.[9] The Complaint sets forth four counts: (1) Purnell violated 18 *Del. C.* § 4350(e) by using the firm or trade name "Delaware Bail Bonds," which

---

[2] R. on Appeal, Ex. 1, Hearing Officer's Recommended Findings ("Recommended Findings") ¶ 1.
[3] *Id.* ¶ 8.
[4] *Id.* ¶¶ 9–10.
[5] *Id.* ¶ 11.
[6] *Id.* ¶ 12.
[7] *Id.* ¶¶ 11–12.
[8] *Id.* ¶ 12.
[9] R. on Appeal, Ex. 1A.3, Complaint ("Complaint").

was not registered, licensed, or approved by the Department; (2) Purnell violated 18 *Del. C.* § 4350(e) by failing to display his registered name and license number on the website www.delawarebailbonds.com; (3) Purnell violated 18 *Del. C.* § 2304(2) by advertising the posting of bonds for as low as one percent down and by advertising attorney referral services; and (4) Purnell cannot fulfill all the criteria for issuance of a bail agent license under 18 *Del. C.* § 4333(c)(c)h because he has demonstrated incompetence, untrustworthiness, and financial irresponsibility in the conduct of business in this State or elsewhere, specifically through his failure to supervise his sub-agents and indemnify Bankers for its losses.[10]

Deputy Attorney General Jessica M. Willey ("DAG Willey") sent Purnell a copy of the Complaint as well as a Notice of Hearing. The Notice of Hearing states:

> [P]ursuant to 18 *Del. C.* §§ 2308 and 4345 and 29 *Del. C.* Ch. 101, [a hearing] will commence on February 17, 2016, at 10:00 a.m., at the Delaware Department of Insurance . . . . The purpose of the hearing is to determine whether the Respondents have committed acts in violation of the Delaware Insurance Code, 18 *Del. C.* §§ 2304(2), 4333(c)(3)h. and 4350(e). The hearing may result in the revocation of Respondents' licenses and/or the levying of a fine pursuant to 18 *Del. C.* §§ 329(a) and 4354(d).[11]

With regard to the due process rights afforded to a respondent in an administrative hearing, the Notice of Hearing specifies:

> You have the right to appear in person at the hearing, to be represented by counsel or by other representatives as permitted by law, to be present

---

[10] *Id.*

[11] R. on Appeal, Ex. 1A.1, Notice of Hearing.

during the giving of evidence, to have reasonable opportunity to inspect all documentary and other evidence, to examine and cross-examine all witnesses, to present evidence in support of the Respondents' interest and to have subpoenas issued by the Commissioner or her duly-appointed representative to compel attendance of witnesses and production of evidence on your behalf.... The decision of the Commissioner or her duly-appointed representative will be reached based upon the evidence received.[12]

Additionally, in her cover letter, DAG Willey informed Purnell: "If you elect to contest the complaint and do not elect to have an attorney represent you, you can contact me with any questions about the hearing."[13] Purnell did not contact DAG Willey with any questions about the hearing, although his assistant did.[14]

A Deputy Commissioner appointed a Hearing Officer, and the Hearing Officer held a hearing on February 17, 2016.[15] Purnell represented himself at the hearing. With regard to the Department's allegation that Purnell's website www.delawarebailbonds.com violates several provisions of the Insurance Code, Purnell's only defense was that the website was not supposed to be accessible to the public. In short, Dean Banks testified on behalf of Purnell that Purnell hired him to create the Delaware Bail Bonds website.[16] Purnell recognized that the website was not, or would not be, compliant with the law, so Purnell asked Banks to create a new

---

[12] *Id.*

[13] R. on Appeal, Ex. 1A.4, Complaint Cover Letter.

[14] R. on Appeal, Ex. 6, Supplemental Recommended Findings of the Hearing Officer dated July 19, 2016 ("Supplemental Recommended Findings") ¶¶ 9–10.

[15] R. on Appeal, Ex. 1A.6, Appointment of Hearing Officer.

[16] R. on Appeal, Ex. 1D, Transcript of February 17, 2016 Hearing ("Tr.") at 100:15-101:5.

website in 2012.[17] However, Purnell wanted keep the benefits of Delaware Bail Bonds' relatively high position on search engines.[18] Accordingly, Banks put a "redirect on Delaware Bail Bonds" with the intention that anyone attempting to access www.delawarebailbonds.com would be automatically redirected to the new website.[19] When questioned as to how the Department was able to access the website, Banks put forward a few hypotheses, but admitted that the website was maintained at Purnell's direction, rather than being shut down or updated to be compliant with Delaware law.[20]

Following the hearing, the Hearing Officer issued his Recommended Findings, recommending that the Commissioner: (1) find Purnell in violation of the 18 *Del. C.* §§ 2304(2) and 4350(e); (2) find that Purnell no longer meets the criteria for issuance of a license under 18 *Del. C.* § 4333(c)(3)h; and (3) immediately revoke Purnell's license.[21] The Hearing Officer did not recommend imposition of a financial penalty.[22]

Purnell timely filed Exceptions to the Hearing Officer's Recommended Findings, asserting that DAG Willey misled him as to the nature of the hearing and

---

[17] *Id.*
[18] *Id.* at 101:5–13.
[19] *Id.* at 101:13–21.
[20] *Id.* at 106:12–24.
[21] Recommended Findings ¶¶ 30–31.
[22] *Id.* ¶ 32.

accusing the Department of discovery and due process violations.[23]  On May 26, 2016, the Commissioner issued an Interim Order remanding the case with respect to several factual and legal issues raised in Purnell's Exceptions.[24]

The Hearing Officer gave the Department until June 24, 2016, to provide an additional written submission addressing Purnell's allegations.[25]  On June 22, 2016, Purnell called the Hearing Officer, claiming to have just received the Hearing Officer's letter directing the Department to respond.[26]  The Hearing Officer informed Purnell that he could not engage in a substantive discussion regarding the case in the absence of DAG Willey.[27]  Purnell asked whether he would be permitted to respond, and the Hearing Officer informed Purnell that if he wished to respond, it must be in writing.[28]  Purnell did not respond.[29]

On July 19, 2016, the Hearing Officer issued Supplemental Recommended Findings and concluded that the issues raised in Purnell's Exceptions were without merit.[30]  Purnell did not file exceptions to the Hearing Officer's Supplemental

---

[23] R. on Appeal, Ex. 2, Appellant's Exceptions to the Hearing Officer's March 28, 2016 Recommended Findings ("Exceptions").

[24] R. on Appeal, Ex. 3, Interim Order of Commissioner Stewart dated May 26, 2016 ("Interim Order").

[25] R. on Appeal, Ex. 4 Order of the Hearing Officer dated May 31, 2016 requiring a Department Response to Specified Portions of Appellant's Exceptions.

[26] Supplemental Recommended Findings ¶ 19.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* ¶¶ 8–18.

Recommended Findings within the twenty day time period set forth in 29 *Del. C.* § 10126.[31] Rather, Purnell sent an untimely letter directly to the Commissioner requesting an audio recording of the hearing.[32] In a second untimely letter, Purnell renewed his request for an audio recording of the hearing and attempted to raise purported deficiencies with the hearing transcript.[33]

On September 26, 2016, the Commissioner issued a Final Decision and Order, adopting all but one of the Hearing Officer's recommended findings and conclusions.[34] Contrary to the Hearing Officer's recommendation, the Commissioner concluded that a financial penalty should be imposed because "[t]he type of conduct demonstrated in this case does impact Delaware consumers by virtue of the intentional and direct disregard of the Delaware Insurance Code and this office's regulatory authority."[35] Accordingly, the Commissioner imposed a $4,000 joint and several fine on Purnell and Bail Bond Agency, Inc.[36]

With respect to Purnell's letters, the Commissioner refused to address the substance of the allegations because "[the letters] were submitted out of time and more significantly, inappropriately directed only to me during a time when this

---

[31] Final Decision at 2.
[32] R. on Appeal, Ex. 7, August 16, 2016 Correspondence from Appellant to Commissioner Stewart.
[33] R. on Appeal, Ex. 8, Appellant's Exceptions to Hearing Officer's July 19, 2016 Supplemental Recommended Findings.
[34] Final Decision at 2–3.
[35] *Id.* at 3.
[36] *Id.* at 5.

8

matter was pending before me."[37] Nevertheless, the Commissioner explained that an audio recording of the hearing was not available because, although the court reporting service engaged by the Department to transcribe the hearing records audio in the process of court reporting, the audio tapes are deleted once the final transcript is issued.[38]

Purnell filed a timely appeal of the Commissioner's Final Decision and Order to this Court.[39]

## II. STANDARD OF REVIEW

On an appeal from a decision of an administrative agency, the Court's review is limited to determining whether the agency "exercised its power arbitrarily or committed an error of law, or made findings of fact unsupportable by substantial evidence."[40] Substantial evidence means relevant evidence that a "reasonable person might find adequate to support a conclusion."[41] The Court will not "weigh the evidence, determine questions of credibility, or make its own factual findings."[42] Moreover, the Court must "take due account of the experience and specialized competence of the agency and the purposes of the basic law under which the agency

---

[37] *Id.* at 3.

[38] *Id.* at 3–4.

[39] R. on Appeal, Ex. 11, Notice of Appeal.

[40] *Gregg v. State*, 2016 WL 4530614, at *4 (Del. Super. Aug. 29, 2016) (quoting *Olney v. Cooch*, 425 A.2d 610, 613 (Del. 1981)).

[41] *Id.* (citing *Oceanport Indus. Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994)).

[42] *Id.* (quoting *Mathis v. Delaware River & Bay Auth.*, 2012 WL 5288757, at *2 (Del. Super. Aug. 22, 2012)).

has acted."[43]

## III. DISCUSSION

Purnell raises the following five issues on appeal: (1) the record is statutorily insufficient for appellate review; [44] (2) Purnell's due process rights were violated because he was misled by the Department as to the nature of the hearing, not given the Department's evidence prior to the hearing, and denied a recess during the hearing to examine the evidence;[45] (3) the Hearing Officer erroneously considered the "incomplete website" and the alleged losses to Bankers;[46] (4) the Commissioner's decision to impose a fine for violating 18 *Del. C.* § 4333(c)(3)h for "demonstrated incompetence, untrustworthiness, and financial irresponsibility in the conduct of business in Delaware and elsewhere" is not supported by substantial evidence;[47] and (5) the Hearing Officer issued his Recommended Findings and Supplemental Recommended Findings with a closed mind.[48]

### A. Record on Appeal

Purnell's argument regarding the sufficiency of the record on appeal has two components. First, Purnell argues that the hearing transcript is incomplete because

---

[43] 29 *Del. C.* § 10142(d).

[44] Appellant's Opening Brief ("Purnell Op. Br.") at 3–4 (Trans. ID. 60136554). Purnell's Opening Brief does not contain page numbers. Therefore, the Court's citations to the Opening Brief are based on the "Nature of Proceedings" section in the Opening Brief being page 1.

[45] *Id.* at 4–6.

[46] *Id.* at 7–8

[47] *Id.*

[48] *Id.* at 8–9.

it does not contain certain statements made by Purnell.[49]  Second, Purnell argues that the record is statutorily insufficient for appellate review.[50]  As to the first component, Purnell alleges that hearing transcript is not accurate and "devoid of his objections and statements on at least nine (9) occasions."[51]  Purnell does not allege that the transcript omits the testimony of any witness.

When acting in its appellate capacity on an appeal from an administrative decision, the Court will not consider issues raised for the first time on appeal.[52]  The court reporter issued a certified final transcript on February 24, 2016.  Purnell could have—but did not—raise purported issues with the transcript either in his first set of Exceptions or in response to the Hearing Officer's Supplemental Recommended Findings.  Notably, in rejecting Purnell's allegation that DAG Willey "ambushed" him at the hearing with a binder of exhibits, the Hearing Officer cited multiple times to the transcript in support of his recommended finding that Purnell's due process rights were not violated.[53]  Rather than file timely exceptions to the Supplemental Recommended Findings, highlighting the purported discrepancies between the transcript and Purnell's recollection of the hearing, Purnell sent two untimely letters

---

[49] *Id.* at 3–4.
[50] *Id.*
[51] *Id.* at 3.
[52] *See, e.g., Mazen v. City of Dover Bd. of Assessment Appeals*, 2016 WL 520996, at *4 (citing *Tatten Partners, L.P. v. New Castle Cty. Bd. of Assessment Review*, 642 A.2d 1251, 1262 (Del. Super. Ct. 1993), *aff'd sub nom. New Castle Cty. v. Tatten Partners, L.P.*, 647 A.2d 382 (Del. 1994)).
[53] Supplemental Recommended Findings at 4–6.

11

directly to the Commissioner. The Commissioner refused to address the substance of the allegations made in those letters because they were ex parte communications submitted beyond the statutory time limitation.[54] Since the issue was not properly raised before the Commissioner, the Court will not address it on appeal. Furthermore, for this reason, to the extent Purnell's other arguments are based on alleged omissions from the transcript, the Court will not consider them.

As to Purnell's ancillary contention that the Commissioner effectively considered his allegations regarding the accuracy of the transcript, and therefore the Court should consider them, this contention is without merit. The Commissioner did not consider the substance of Purnell's allegations regarding the transcript. The Commissioner determined whether Purnell's request for an audio recording could be accommodated. It could not.

As to the second component of Purnell's argument, that the record is statutorily insufficient for appellate review, Purnell argues that the lack of an audio recording violates the Administrative Procedures Act ("APA").[55] To the extent it does not conflict with Chapter 3, Title 18 of the Delaware Code, the APA governs administrative proceedings before the Commissioner.[56] Specifically, the APA provides that "[a] record from which a verbatim transcript can be prepared shall be

---

[54] Final Decision at 3.
[55] Chapter 101, Title 29 of the Delaware Code.
[56] 18 *Del. C.* § 323(f).

12

made of all hearings in all contested cases,"[57] and the record of the case shall include "all notices, correspondence between the agency and the parties, all exhibits, documents and testimony admitted into evidence and all recommended orders, summaries of evidence and findings and all interlocutory and final orders of the agency."[58] Similarly, the Insurance Code provides that on an appeal from a decision of the Commissioner, "the Commissioner shall cause to be prepared an official record . . . which shall contain a copy of all proceedings and orders of the Commissioner appealed from and the transcript of testimony and evidence or summary record thereof."[59]

Purnell cites *Richardson v. Board of Cosmetology and Barbering*[60] and highlights the APA's requirement that "[a] record from which a verbatim transcript can be prepared"[61] in support of his argument that the APA requires the Department to preserve an audio recording of the hearing. In *Richardson*, a cosmetologist contested a hearing officer's findings in a meeting before the Board of Cosmetology and Barbering.[62] On appeal, the record contained only minutes of the meeting rather than a verbatim transcript.[63] The Delaware Supreme Court held that the Board of

---

[57] 29 *Del. C.* § 10125(d).
[58] *Id.* § 10127.
[59] 18 *Del. C.* § 328(e).
[60] 69 A.3d 353 (Del. 2013).
[61] 29 *Del. C.* § 10125(d).
[62] 69 A.3d at 355.
[63] *Id.*

13

Cosmetology and Barbering violated the APA by failing to retain a record of the meeting from which a verbatim transcript could be prepared.[64]

Contrary to Purnell's argument, neither the relevant statutory provisions nor *Richardson* requires an audio recording of the proceedings to perfect the record for appeal. In this case, a professional court reporter was present at the February 17, 2016 hearing. On February 24, 2016, the court reporter issued a final transcript and certified that the final transcript is a true and accurate transcript of her stenographic notes taken at the hearing.[65] Therefore, on its face, the transcript is complete and sufficient for appellate review. There being no timely objection before the Commissioner to the sufficiency of the transcript, the Court finds the transcript, and the Record in this case, sufficient for appellate review.

## B. Alleged Due Process Violations

Purnell argues that the Commissioner erred in denying his due process arguments. Specifically, Purnell maintains: (1) the Department misled him as to the nature of the hearing; (2) the Department was required to provide him with its evidence before the hearing; and (3) the Hearing Officer abused his discretion by refusing Purnell's request for a recess during the hearing to examine the Department's evidence.[66]

---

[64] *Id.* at 357–58.
[65] Tr. at 272.
[66] Purnell Op. Br. at 4–6.

## 1. Alleged Misrepresentations Made by the Department

In his timely Exceptions to the Hearing Officer's Recommended Findings, Purnell alleged that prior to the hearing his office assistant called DAG Willey and DAG Willey told his assistant that the hearing was "informal" and "not like court."[67] The Commissioner remanded the matter to the Hearing Officer for further consideration of this issue.[68] In response to Purnell's allegations, the Department submitted an affidavit from a Department paralegal who participated in the disputed telephone call.[69] The paralegal averred that DAG Willey did not indicate the hearing was informal, expressly told Purnell's assistant that the hearing would be a formal administrative hearing, and expressly told the assistant that the hearing would proceed similar to a court hearing in that both parties would present evidence and have an opportunity to cross-examine witnesses.[70] This recitation is consistent with the Department's Notice of Hearing sent to Purnell along with the Complaint.[71]

In his Supplemental Recommended Findings, which the Commissioner adopted in her Final Decision, the Hearing Officer found that DAG Willey did not mislead Purnell as to the nature of the hearing.[72] In support of this factual finding,

---

[67] Exceptions ¶ 3.

[68] Interim Order at 2.

[69] Both DAG Willey and the paralegal were on the call. R. on Appeal, Ex 5, Department of Insurance's Response to Appellant's Exceptions Dated June 1, 2016, Ex. A, Affidavit of Nicole V. Holecek.

[70] *Id.* ¶ 5.

[71] *See supra* pp. 4–5.

[72] Supplemental Recommended Findings ¶¶ 8–11.

the Hearing Officer accepted the representations of DAG Willey and the Department paralegal, who were parties to the disputed phone call, over Purnell's representations.[73] Moreover, the Hearing Officer noted that, if Purnell was truly misled by the Department, Purnell would have objected in some fashion at the hearing.[74]

The Court finds that the Commissioner's factual finding that DAG Willey did not mislead Purnell regarding the nature of the hearing is supported by substantial evidence.

### 2. The Department's Alleged Failure to Provide Its Evidence to Purnell Before Hearing

In his timely Exceptions to the Hearing Officer's Recommended Findings, Purnell also contended that DAG Willey failed to provide him with the Department's evidence prior to the hearing and, therefore, the Department's evidence should not have been admitted at the hearing.[75] In his Supplemental Recommended Findings, the Hearing Officer recommended that the Commissioner find that Purnell never

---

[73] *Id.* ¶ 3 ("The Hearing Officer is satisfied from the sworn statements of Ms. Holocek, and from the representations by Ms. Willey as a member of the Delaware Bar, that Respondents were not misled by any statements of Ms. Willey to 'Malakai' during the pre-hearing conversation.") Purnell, in one of his untimely letters to the Commissioner, claimed that this phone call was put "on speaker" in his office and he "heard every word" of it. R. on Appeal, Ex. 8, Appellant's Exceptions to Hearing Officer's July 19, 2016 Supplemental Recommended Findings at 1. However, in his timely Exceptions, Purnell did not assert that he was a party to the call. Exceptions ¶ 3.
[74] Supplemental Recommended Findings ¶ 11.
[75] Exceptions ¶¶ 8–12.

requested the Department's evidence prior to the hearing and that, even if Purnell had made such a request, there could be no discovery violation because in a civil administrative proceeding the Department would not be under an obligation to produce it.[76]

The APA does not provide for formal discovery, and it is well-settled under Delaware law that, "[i]n an administrative hearing, due process does not require formal discovery."[77] Rather, "[d]ue process requires [only] that the notice inform the party of the time, place, and date of the hearing and the subject matter of the proceedings."[78] Therefore, the Court finds that the Commissioner did not make an error of law or abuse her discretion in adopting the Hearing Officer's recommended finding that Purnell's due process rights were not violated when the Department did not supply him with copies of its exhibits prior to the hearing.

Purnell also argues that his due process rights were violated because he was not truly aware of the subject matter of the hearing.[79] To the extent this objection was raised at the hearing and rejected by the Hearing Officer, the Court finds that Purnell's argument is meritless and no error of law was made in rejecting the

---

[76] Supplemental Recommended Findings ¶ 17.

[77] *Eastburn v. Del. Harness Racing Comm'n*, 2006 WL 2900768, at *4 (Del. Super. Aug. 22, 2006) (citing *Matter of Gresick*, 1988 WL 116411, at *6 (Del. Super. Nov. 2, 1988)); *Gresick*, 1988 WL 116411, at *6 ("[F]ormal discovery is not necessary for due process to be satisfied in an administrative proceeding.").

[78] *Gresick*, 1988 WL 116411, at *6 (citations omitted).

[79] Purnell Op. Br. at 4.

objection. Prior to the hearing, the Department sent Purnell a cover letter, a Notice of Hearing, and a copy of the Complaint. The Notice expressly indicated the time, date, and place of the hearing, and the Complaint set forth the statutory provisions the Department alleges Purnell violated and set forth in detail the factual allegations the Department believed would establish those violations.[80] Furthermore, the Complaint specifically requests that the Commissioner revoke Purnell's license and impose a financial penalty. As previously explained, DAG Willey did not mislead Purnell regarding the nature of the hearing. Therefore, any difficulties Purnell experienced in presenting his case to the Hearing Officer are of his own making and do not constitute a denial of due process.[81]

### 3. The Hearing Officer's Refusal to Grant Purnell a Recess to Examine Evidence

Finally, with respect to due process, Purnell argues that the Hearing Officer erred and violated Purnell's due process rights by denying Purnell's request for a recess to review the Department's evidence during the hearing.[82] Purnell's argument concerns the Department's Exhibit 11. Exhibit 11 consists of a two page cover letter

---

[80] *See supra* pp. 3–5.

[81] Significantly, Purnell could have reached out to DAG Willey in advance of the hearing with any questions that he had. DAG Willey's cover letter, included with the Notice of Hearing and the Complaint, expressly invited Purnell to do so if he was not represented by counsel. R. on Appeal, Ex. 1A.4 Complaint Cover Letter. *See Gresick*, 1988 WL 116411, at *7 ("They cannot claim injury when the injury is the result of their own failure to exercise procedures available to them." (citing *Cook v. Oberly*, 459 A.2d 535, 540 (1983))).

[82] Purnell Op. Br. at 4.

from Bankers to the Department with attached documentation: (1) Bankers' Supervising Producer Agreement with Purnell; (2) Bankers' Sub Producer Agreements with the sub-agents supervised by Purnell; and (3) the Notice of Termination Letters Bankers sent to Purnell and his sub-agents when it terminated their respective contracts.[83] Bankers terminated Purnell's contract for cause as of March 7, 2014.[84]

At the hearing, the Department's witness, a Department market conduct examiner, explained that Exhibit 11 is Banker's letter response to her inquiries regarding Purnell's status as a general agent.[85] The witness testified regarding the materials attached to Banker's letter, clarifying that the attachments consisted of the aforementioned agreements and correspondence between Bankers and Purnell or his sub-agents and that the termination letters included calculations of outstanding liabilities.[86] When the Department sought admission of Exhibit 11 into evidence, Purnell stated that it was "too long," and the Hearing Officer offered him the opportunity to review it.[87] In response, Purnell stated it would take him two to three days to review.[88] The Hearing Officer stated that three days were not allotted for the

---

[83] R. on Appeal, Ex. 1A.11 Correspondence from Lisa A. Basta, Esq., Senior Vice President of Bankers Insurance Company regarding John Purnell's status as a general agent.
[84] *Id.*
[85] Tr. at 42:6–17.
[86] *Id.* at 42:18–44:2.
[87] *Id.* at 46:16–24.
[88] *Id.* at 47:1–7.

hearing, but Purnell could take time to review it to determine whether he had an objection to this exhibit. The Hearing Officer added, "[w]e have all day."[89] Purnell did not take the opportunity to review the exhibit.[90] Rather, he indicated that he had no objection to its admission into evidence.[91]

On this point, Purnell argues that the case is substantially similar to *Matter of Gresick*.[92] In *Gresick*, the Consumer Affairs Board denied Edward Gresick's request for a continuance to review evidence.[93] The Court found the Board did not abuse its discretion when, *inter alia*: (1) the Division of Consumer Affairs had given Gresick ample and timely notice as to the hearing schedule and the charges against him; (2) the Division arranged two pre-hearing meetings to discuss the evidence with Gresick that Gresick failed to appear at; (3) Gresick consulted an attorney before the hearing; and (4) the State might suffer prejudice if rescheduled because its witness came to the hearing voluntarily, and the Board had no subpoena power over the witness.[94]

Purnell argues that since several of the factors present in *Gresick* are absent in the instant case, the Hearing Officer must have abused his discretion in refusing to grant a recess.[95] This argument is meritless. In this case, as in *Gresick*, the

---

[89] *Id.* at 47:3–16.
[90] *Id.* at 47:20–48:4.
[91] *Id.*
[92] 1988 WL 116411 (Del. Super. Nov. 2, 1988).
[93] *Id.* at *4.
[94] *Id.* at *7–8.
[95] Purnell Op. Br. at 6.

20

respondent was given ample and timely notice as to the hearing schedule and the charges against him. The presence or absence in this case of the other factors highlighted *Gresick* is not dispositive.

Here, DAG Willey sent Purnell a Notice of Hearing, a detailed Complaint, and invited Purnell to call her if he had questions regarding the hearing. Additionally, although it is lengthy, the bulk of Exhibit 11 consists of the Supervising Producer and Sub-Producer Agreements, documents Purnell should have been familiar with. Had Purnell taken the opportunity offered to him to review Exhibit 11 during the hearing, he would have realized that most, if not all, of the attached documents were known to him. Tellingly, Purnell does not identify what objection he would have offered to the admissibility of Exhibit 11 if given the requested two to three day recess to examine it. The Court finds that the Hearing Officer did not abuse his discretion in refusing to continue the hearing based on Purnell's bare bones objection that the Department's Exhibit 11 was "too long."

## C. Whether the Hearing Officer Abused his Discretion in Considering the Department's Screenshots of www.delawarebailbonds.com and Banker's Alleged Losses

Next, Purnell raises three arguments under the heading "[the Department] did not provide sufficient evidence regarding the complaint(s)": (1) the Commissioner's decision is not supported by substantial evidence due to the alleged "spoliation" of evidence, i.e. the court reporter's non-retention of an audio recording; (2) the

Hearing Officer should not have admitted into evidence screenshots of www.delawarebailbonds.com because they were an "incomplete re-production of the purported[] 'deceptive' website"; and (3) the Hearing Officer should not have considered the Department's evidence of Purnell's liability to Bankers due to litigation between Bankers and Purnell in Florida.[96]

As to Purnell's first argument, styled as a matter of "spoliation" of evidence to a large extent this accusation stems from Purnell's allegations regarding the completeness of the transcript, and the Court will not consider those aspects of the argument for the reasons previously discussed. Nevertheless, the Court notes that Purnell has never alleged that the transcript omits any testimony given before the Hearing Officer, nor has Purnell ever alleged that an exhibit admitted into evidence was not preserved.[97] Therefore, the Court finds Purnell's argument that "spoliation" of evidence renders the Commissioner's Final Decision unsupported by substantial evidence is meritless.

As to Purnell's second argument, that the Hearing Officer erred in admitting screenshots of www.delawarebailbonds.com, and therefore, the violations based on the Delaware Bail Bonds website must fail for lack of substantial evidence, this argument is also without merit for the following reasons.

---

[96] Purnell Op. Br. at 7–8.
[97] *See* R. on Appeal, Ex. 8, Appellant's Exceptions to Hearing Officer's July 19, 2016 Supplemental Recommended Findings at 2.

At the hearing, a market conduct examiner for the Department, Keith O'Connell, testified that he examined the website advertising Delaware Bail Bonds.[98] Through Mr. O'Connell, the Department introduced screenshots of the Delaware Bail Bonds website.[99] Mr. O'Connell testified that he personally accessed the website and determined that it was related to Purnell and his company because the address and telephone number listed on the website were identical to those listed in the Department's files.[100] When the Department requested that the screenshots be admitted into evidence, Purnell stated "I have no objection to it."[101] Furthermore, in his testimony, Purnell admitted that www.delawarebailbonds.com is his website and that he is responsible for ensuring that the information on the website is correct.[102]

Purnell's only specific argument regarding the screenshots of Delaware Bail Bonds' website is his allegation that the Department's exhibit is somehow incomplete and deceptive. Purnell implies that the omitted pages must have contained information favorable to him and concludes that "it can be surmised that evidence was created.[103] However, Purnell does not explain what information appeared on the allegedly omitted pages that would have cured the violations alleged by the Department. The Court finds that the Hearing Officer did not abuse his

---

[98] Recommended Findings ¶ 8.
[99] *Id.*
[100] *Id.* ¶¶ 8–9.
[101] Tr. at 19:19–20:5.
[102] *Id.* at 251:13–17.
[103] Purnell Op. Br. at 7.

discretion by admitting screenshots of the Delaware Bail Bonds website into evidence.

The legal basis for Purnell's third argument, that the Commissioner should not have considered evidence of Purnell's liability to Bankers because "the alleged loss caused by [Purnell] has not been proven by the Florida courts,"[104] is unclear. In his reply brief, Purnell restyles this argument as a matter of res judicata and argues the Commissioner "lacked subject matter jurisdiction with respect to the forfeitures" due to the prior civil litigation initiated by Bankers against Purnell in Florida.[105] In support of this argument, Purnell argues that the Department "came into privity of Bankers' legal action against the appellant in Florida" and, therefore, the doctrine of res judicata bars the Department from seeking revocation of Purnell's license and financial penalties in an administrative proceeding before the Commissioner.[106]

Under the doctrine of res judicata, a party is foreclosed from "bringing a second suit based on the same cause of action after a judgment has been entered in a prior suit involving the same parties."[107] While the precise contours of Purnell's res judicata argument are unclear, it is clear that the doctrine is not implicated in this case. The Department is not a party to Bankers' action against Purnell in Florida,

---

[104] *Id.*
[105] Amended Reply Brief at 9 (Trans. ID. 60370257).
[106] *Id.* at 11.
[107] *Betts v. Townsends, Inc.*, 765 A.2d 531, 534 (Del. 2000).

and the Department is not seeking a judgment against Purnell for the losses caused to Bankers. This case is an administrative proceeding brought by the Department against Purnell and his company for violations of the Insurance Code. Therefore, the doctrine of res judicata is not applicable here.

## D. Whether the Commissioner's Decision to Impose a Fine is Supported by Substantial Evidence

"The choice of penalty by an administrative agency is a matter of discretion to be exercised solely by the agency, as long as it is based on substantial evidence and not outside of its statutory authority."[108] Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion" or, stated differently, "more than a scintilla, but less than a preponderance of the evidence."[109] In determining whether substantial evidence exists to support the Commissioner's Final Decision, "the Court will consider the record in the light most favorable to the party prevailing below."[110]

In its Complaint, the Department sought the imposition of a financial penalty pursuant to 18 *Del. C.* § 329(a). Section 329(a) authorizes the Commissioner to impose a financial penalty on any person who has violated any provision of the

---

[108] *Villabona v. Bd. of Med. Practice of State*, 2004 WL 2827918, at *7 (Del. Super. Apr. 28, 2004) (citations omitted).

[109] *Rooney v. Delaware Bd. of Chiropractic*, 2011 WL 2088111, at *3 (Del. Super. Apr. 27, 2011) (first quoting *Olney*, 425 A.2d at 61; and then citing *Breeding v. Contractors–One–Inc.*, 549 A.2d 1102, 1104 (Del. 1988)).

[110] *Munir v. Delaware Examining Bd. of Physical Therapy*, 1999 WL 517412, at *1 (Del. Super. Apr. 26, 1999), *aff'd*, 737 A.2d 531 (Del. 1999).

25

Insurance Code.[111] In her Final Decision and Order, the Commissioner imposed three $500 fines against Purnell for violations of 18 *Del. C.* § 4350(e) and § 2304(2).[112] Among other things, § 4350(e) prohibits advertising under a trade name that is not registered, licensed, and approved by the Department, and § 2304(2) prohibits advertisements which are untrue, deceptive, or misleading. It is undisputed that Purnell never registered the trade name Delaware Bail Bonds, that www.delawarebailbonds.com does not display Purnell's registered name and license number, and that www.delawarebailbonds.com, which Purnell maintained as an active website, contains statements which do not comply with Delaware law.[113] Therefore, the Court finds that the Commissioner's imposition of three $500 fines against Purnell for violations of 18 *Del. C.* § 4350(e) and § 2304(2) is both supported by substantial evidence and is within the Commissioner's statutory authority under 18 *Del. C.* § 329(a).

While the aforementioned $500 fines are plainly within the Commissioner's statutory authority to impose financial penalties for violations of the Insurance Code, the same is not true of the Commissioner's imposition of a $2,500 fine against

---

[111] 18 *Del. C.* § 329(a) ("[T]he Commissioner, upon a finding after notice and hearing conducted in accordance with the provisions of this chapter, that any person, insurer or insurance holding company has violated any provision of this title or any regulation implementing said title, may impose or order an administrative penalty in an amount of money that is reasonable and appropriate in view of the facts and circumstances surrounding the violation.").

[112] Final Decision at 5.

[113] Tr. at 252:7–20.

Purnell "for violating 18 *Del. C.* § 4333(c)(3)h" by demonstrating "incompetence, untrustworthiness, and financial irresponsibility in the conduct of business in Delaware and elsewhere."[114] Unlike §§ 4350(e) and § 2304(2), which prohibit certain kinds of advertising, § 4333 lays out the requirements for individuals seeking a bail agent license (including the requirement that they have not demonstrated incompetence, untrustworthiness or financial irresponsibility in the conduct of business in Delaware or elsewhere). Pursuant to 18 *Del. C* § 4354(d),[115] the Commissioner was within her statutory authority to revoke Purnell's license based on the factual finding that he violated the Insurance Code and that he demonstrated incompetence, untrustworthiness, or financial irresponsibility in the conduct of business. However, § 4333 does not authorize the imposition of a financial penalty for previously licensed bail agents who are found to no longer meet the requirements of § 4333.

Because neither § 4333 nor the other statutory provisions cited in the Commissioner's Final Decision and Order clearly authorize the imposition of a financial penalty for failing to meet the requirements for bail agent licensure, the Court requested that the Department identity the statutory provision authorizing the

---

[114] Final Decision at 5.

[115] 18 *Del C.* § 4354(d) ("The Commissioner may deny, suspend, revoke, or refuse to renew any license . . . [for] any violation of the insurance code or if the person at any time fails to meet all of the criteria for issuance or renewal of a license as enumerated in this subchapter.").

Commissioner to impose a financial penalty "for violating 18 *Del. C.* § 4333(c)(3)h." In response to the Court's inquiry, the Department affirmed that, while the Commissioner does have general authority under § 329(a) to impose financial penalties for violations of the Insurance Code, the Department does not take the position that a failure to satisfy the eligibility requirements of § 4333 constitutes a violation of the Insurance Code for which a financial penalty is appropriate. The Department highlighted the fact that it never sought the imposition of a financial penalty for Purnell's alleged failure to meet the requirements of § 4333, only revocation of Purnell's license, and the Department affirmed that it would not be seeking to enforce the portion of the Final Decision and order purporting to impose a $2,500 fine for "violating 18 *Del. C.* § 4333(c)(3)h." In light of the foregoing, the Court finds that the $2,500 fine imposed for "violating 18 *Del. C.* § 4333(c)(3)h" is not within the Commissioner's statutory authority and, therefore, the portion of the Commissioner's Final Decision and Order imposing the $2,500 penalty is **REVERSED.** However, with respect to the Commissioner's revocation of Purnell's license, the Department introduced into evidence a general agent contract between Purnell and Bankers, which provided that Purnell should supervise his sub-agents' conduct and was liable for the actions of his sub-agents, including any forfeitures caused by them.[116] Attached to that contract is documentation showing that Purnell

---

[116] R. on Appeal, Ex. 1A.11 Correspondence from Lisa A. Basta, Esq., Senior Vice President of

28

and his sub-agents have caused more than $300,000 in losses to Bankers due to forfeitures resulting from their business practices.[117] Moreover, in his testimony, Purnell admitted that he contracted with Bankers as a general agent, that he entered into contracts with various sub-agents, that he would be liable for his sub-agents' actions in connection with the bonds they post, and that those agents had forfeitures (as a result of defendants failing to appear) "probably . . . in the millions."[118] Viewing the record in a light most favorable to the Department, there is substantial evidence to support the Commissioner's finding that Purnell demonstrated "incompetence, untrustworthiness, and financial irresponsibility" in the course of doing business with Bankers.

**E.    Whether the Hearing Officer Issued his Recommended Findings and Supplemental Recommended Findings With a Closed Mind**

Finally, Purnell argues that the Hearing Officer was not fair and impartial, and "[Purnell] was assumed guilty before ever having set foot in the hearing."[119] In support of this contention, Purnell argues that the Hearing Officer rejected Purnell's various objections "without batting any eye" and displayed "blind partiality to [the Department]."[120]

These accusations of partiality are not supported by the Record. For example,

---

Bankers Insurance Company regarding John Purnell's status as a general agent.
[117] *Id.*
[118] Tr. at 228:10–229:12, 230:3–8.
[119] Purnell Op. Br. at 8.
[120] *Id.*

29

the Hearing Officer overruled the Department's objections to Purnell's exhibits several times.[121] Further, when Purnell was not prepared with paper copies of evidence he intended to have admitted, the Hearing Officer attempted to allow Purnell an opportunity to obtain documentation suitable for admission into evidence either by utilizing a computer and printer owned by the Department or by taking a recess so that Purnell might obtain copies himself.[122] DAG Willey did not object to Purnell's potential use of the Department's technology, except to request that Purnell first establish the relevance of what Purnell intended to print out.[123] Purnell declined, stating, "I have to go through my exhibits to show that. I can't just blurt it out. That would just devalue everything I'm going to say."[124] As to a potential recess, Purnell indicated that he could not take a recess to better prepare his exhibits because "I really didn't think it would be this long," and he had a prior commitment to pick up his son at 3:00 p.m.[125] As a final example, when Purnell's self-created time constraints came to light, the Hearing Officer cautioned Purnell that he had not yet presented evidence to rebut the second half of the Department's case.[126]

In light of the foregoing, the Court finds Purnell's accusation that the Hearing Officer was not fair and impartial is meritless.

---

[121] *E.g.*, *id.* at 121:13–23, 129:15–22.
[122] Tr. at 72:23–80:22.
[123] *Id.* at 76:18–77:2.
[124] *Id.* at 79:24–80:3.
[125] *Id.* at 133:11–24.
[126] *Id.* at 160:24–161:22.

## IV. CONCLUSION

The Court finds that the record on appeal is complete, the Department has complied with due process in conducting the proceedings below, and except for the imposition of a fine for "violating" 18 *Del. C.* § 4333(c)(3)h, the Commissioner's decision is supported by substantial evidence, free from legal error, and not arbitrary. For the reasons stated above, the Commissioner's September 26, 2016 Final Decision and Order is **AFFIRMED in part and REVERSED in part**.

**IT IS SO ORDERED.**

Jan R. Jurden, President Judge