# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| CRAIG PEED, | ) ) ) | C.A. No.: S25A-06-001 RHR |
| Appellant, | ) ) |  |
| v. | ) ) |  |
| ESSENTIAL STAFFING, INC., | ) ) |  |
| Appellee. | ) ) |  |

Submitted: October 27, 2025
Decided: January 27, 2026

## MEMORANDUM OPINION

*On Appeal from the Industrial Accident Board,*
**AFFIRMED**.

Michael G. Owen, Esq., Ashley C. Curran, Esq., MORRIS JAMES, LLP, Wilmington, Delaware, *Attorney for Appellant Craig Peed.*

Andrew J. Carmine, Esq., ELZUFON AUSTIN & MONDELL, P.A., Wilmington, Delaware, *Attorney for Appellee Essential Staffing, Inc.*

**Robinson, J.**

Craig Peed appeals from the Industrial Accident Board's 2025 denial of his Petition to Determine Additional Compensation Due. Peed was injured in a 2012 accident while he was working for Essential Staffing, Inc. ("Essential"). The Board found that Peed had not met his burden of proof to show a causal connection between the accident and recent dental treatment for his lower teeth. The Board, therefore, denied compensation. This court affirms.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 27, 2012, Peed sustained serious, multiple injuries while performing tree trimming services through Essential. A tree limb fell and hit him in the head, causing two skull fractures, fractures to both orbital bones, fractures to both mastoid bones, fractures to bones around the mouth, and injuries to other areas of the body. Peed also suffered a traumatic injury to the maxillary region, which includes the upper front teeth. After Essential acknowledged the accident and Peed received total disability and was compensated for all medical expenses and permanent impairment.

Part of Peed's compensation was for injuries to his upper teeth numbered five through eight. After a few years, the stress from the accident caused Peed's upper teeth numbered nine through eleven to also fracture at the gum line. Peed filed a Petition to Determine Additional Compensation Due before the Board on May 8, 2017, seeking payment from Essential for the additional dental work. After hearing

2

the matter on January 25, 2018, the Board determined in a February 5 decision that the fractures to the teeth were causally related to the work accident. As a result, Peed's regular dentist, Dr. Arvind Jain, performed root canals on the affected teeth and placed a bridge, or connected crowns, from teeth numbered three through thirteen. Dr. Jain completed this work in October of 2018.

In the 2018 decision, the Board found Dr. Jain's expert testimony more persuasive than Essential's expert because it was more consistent with the facts and Peed's overall condition. The Board accepted Dr. Jain's determination that the problems with teeth nine through eleven were a result of the extra stress caused by the accident. The Board credited Dr. Jain's conclusion that Peed's lack of dental care while intubated in a coma lead to the desiccation, or dehydration, of his teeth, which can cause problems years later. The Board found that Peed's dental hygiene was poor since the accident due to memory loss and concentration issues. The Board accepted, however, that Peed's dental condition before the accident, including fillings and extractions, would not have caused his top front teeth to fracture at the gum line. The Board accepted Dr. Jain's opinion that Peed's lower teeth did not experience trauma, did not have nerve exposure, and did not have fractures like the upper teeth.

During a routine checkup with Dr. Jain on May 16, 2023, Dr. Jain discovered that Peed's lower teeth appeared to be so worn out that they were practically stumps

3

and were close to having nerve exposure. Dr. Jain believed the wear on the lower teeth was caused by the bridge on Peed's upper teeth since it was made from a different material than enamel and created extra friction. Dr. Jain performed root canals on Peed's lower teeth numbered twenty through twenty-eight between June 27, 2023, and September 17, 2024. Dr. Jain recommended crowns or a bridge to restore Peed's ability to chew.

Peed filed a Petition to Determine Additional Compensation Due before the Board on December 6, 2024, seeking payment from Essential for the root canal work done on the lower teeth and for the remaining work Dr. Jain recommended. The Board heard the Petition on May 14, 2025, and by decision dated May 27 determined that Peed failed to meet his burden of proving that his treatment for the lower teeth at issue was causally related to the accident. In reaching this conclusion, the Board relied on Essential's expert, Dr. Barry Berman.

In its findings, the Board concluded that Dr. Jain's testimony was not persuasive. The Board found Dr. Jain's testimony to be inconsistent since he suggested that the deterioration of the lower teeth occurred gradually but also rapidly. Furthermore, the Board emphasized that Dr. Jain relied on a photograph taken by Dr. Berman in 2024 to show that the lower teeth had been worn down to the gumline, but the photograph was taken after Dr. Jain had performed the root canals, which required him to grind the teeth down to perform the treatment.

4

The Board accepted Dr. Berman's testimony finding that the problems with the lower teeth were not a result of the accident. Dr. Berman based his conclusions on his own examination and x-ray done of Peed on January 23, 2024. Dr. Berman also reviewed all medical documents provided to him by Peed including the two prior defense medical examination reports and Dr. Jain's treating records.[1]

The Board highlighted how Dr. Berman found nothing in Dr. Jain's records that explained the need for Peed's root canals to the lower teeth. Dr. Berman observed that the lower teeth at issue had dental decay according to a photograph from 2012 but were restored and filled as seen in a 2017 photograph. The Board noted that some of Peed's lower teeth that were not at issue were removed before the accident due to dental decay. Based on the photographs he viewed, Dr. Berman stated that the lower teeth did not have such severe decay to cause a need for root canals. The Board referenced Dr. Berman's explanation that being in a coma and intubated would not lead to the bottom teeth becoming decayed or more susceptible to being ground down. Dr. Berman reasoned that while a patient's teeth can have no pain or sensitivity at one visit but then show problems months later, this problem would not happen to nine teeth in a row.

---

[1] D.I. 12, Appellant's Opening Br., Ex. G at 28:14-18 and 36:18-37:13 (Dr. Berman was not provided with the Christiana Hospital records, Dr. Jain's x-rays, or any photos from the time between the upper bridge's installation and when Dr. Jain discovered the lower teeth needed work).

Dr. Berman disagreed that the upper bridge caused wear on the lower teeth. The Board agreed with Dr. Berman's statement that Dr. Jain would have seen this deterioration begin and would have recommended a night guard to prevent it. Dr. Berman reasoned that upper bridges do not cause damage to lower teeth unless the patient had bruxism or jaw muscle spasms, which Peed did not have, or if the cement seal breaks causing oral fluids to leak. If the upper bridge caused damage, it would take years to cause wear on the opposite side. Dr. Berman noted he had never seen a bridge wear down teeth as described by Dr. Jain in his fifty-five years of experience.

After the Board rendered its final decision on May 27, 2025, Peed timely filed this appeal of the Board's decision on June 17, 2025.[2] Peed filed his opening brief on appeal on September 18, 2025.[3] Essential filed its answering brief on October 10, 2025.[4] Peed filed his reply brief on October 23, 2025.[5]

## THE PARTIES' CONTENTIONS

### A. Peed's Claims

Peed alleges in his opening brief that the Board erred based on the following grounds: (1) it ignored the law of the case it established in the 2018 decision, (2) it

---

[2] D.I. 1, Appellant's Notice of Appeal.
[3] D.I. 12, Appellant's Opening Br. on Appeal.
[4] D.I. 13, Appellee's Answering Br.
[5] D.I. 14, Appellant's Reply Br. on Appeal.

6

relied on expert testimony that contradicted its 2018 findings, (3) it relitigated issues barred by *res judicata*, (4) its decision is unsupported by substantial evidence due to its improper reliance on Dr. Berman's testimony; and (5) it failed to make a ruling on an objection raised against the admissibility of Dr. Berman's testimony.

Peed first alleges that the Board violated the law of the case doctrine. Peed argues that the Board abandoned its 2018 findings without new evidence or change in the law. Such abandoned findings included Dr. Jain's testimony about dental trauma manifesting years later, a coma and intubation causing desiccation of Peed's teeth which made delayed fractures foreseeable, and Peed's lower teeth being in good condition as of the 2018 decision. Peed argues that the Board's decision in 2025 that his lower teeth were already decayed in 2012 and desiccation from the coma would not have caused decay contradicted its previous findings. Peed further emphasizes that the Board's 2025 decision concluded that desiccation to the lower teeth was impossible.

Next, Peed alleges that the Board erred by relying on Dr. Berman's testimony, which contradicted its 2018 findings. Peed claims that the Board relied on Dr. Berman's opinions without providing justification for its reliance on contradictory conclusions. Thus, Peed alleges that the Board erred in relying on testimony that ignored its earlier findings.

7

Peed also alleges that the issues the Board decided in the 2025 decision were barred under *res judicata*. Peed claims that the Board previously decided on the same issues in 2018. Peed argues that because the Board had jurisdiction, the parties were the same in all previous matters, and the proceedings arose from the same accident, the 2018 findings were final and binding on the 2025 decision.

Peed claims that the Board's decision was unsupported by substantial evidence due to various issues with Dr. Berman's testimony. Peed states that Dr. Berman's testimony was based on an incomplete record. Specifically, he alleges that Dr. Berman failed to review x-rays, photographs, and medical records. Peed alleges that Dr. Berman did not review the relevant medical and dental records, but rather only reviewed two prior DME reports and Dr. Jain's treatment notes. Dr. Berman did not know what material the upper bridge was made of. Peed also emphasizes that Dr. Berman rested opinions about post-accident care in relation to coma-related desiccation on his own personal care that he received twenty years ago.

Finally, Peed argues that the Board was required to rule on an objection made at the hearing but failed to do so. During the hearing, Peed renewed an objection that was made during Dr. Berman's deposition on the basis that his written report did not establish a clear basis for his opinions. Peed alleges that by not making a ruling on the objection and permitting Dr. Berman's testimony, the Board caused legal error

8

that resulted in prejudice to Peed since the opinions Dr. Berman expressed were not disclosed in his report.

**B.    Essential's Claims**

In its answering brief, Essential asserts the following arguments: (1) neither *res judicata* nor collateral estoppel apply since the 2025 issue was separate and distinct from the 2018 issue, (2) the Board did not rely on contradictory expert testimony in its 2025 decision, (3) the Board did not err in permitting Dr. Berman's testimony over Peed's objection; and (4) the Board acted within its purview in crediting Dr. Berman's testimony.

First, Essential argues that the Board has authority to review its prior compensatory claims under 19 *Del. C.* § 2347. Essential states that the Delaware Supreme Court found *res judicata* would not apply under these circumstances. Essential alleges that treatment to the lower teeth was a separate and distinct issue from the 2018 issue. Essential alleges that *res judicata* would only bar the parties from relitigating the 2018 finding that Peed's upper teeth treatment was causally related to the work accident. Essential argues the same under the theory of collateral estoppel. Essential states that although both decisions involved dental treatment, each petition brought before the Board is not an adjudication of a claimant's future condition.

Essential states that the expert testimony by Dr. Berman did not contradict the Board's findings in 2018 since the lower teeth were not at issue in that decision. Essential highlights that the only testimony raised in the 2018 hearing about Peed's lower teeth were Dr. Jain's statements that the lower teeth did not have trauma and have not had any issues. As to the issue about desiccation, Essential argues that the Board agreed with Dr. Jain in its 2018 decision that the desiccation from the lack of dental care while in a coma was only to Peed's upper teeth.[6] Essential states that the 2025 decision differs because it found that being in a coma or intubated would not cause decay or a greater likelihood of the lower teeth being ground down.

Next, Essential cites to 19 *Del. C.* § 2121 to argue that the Board may disregard rules of evidence in its decisions, so long as it is not an abuse of discretion. Essential asserts that Dr. Berman's report was written on January 23, 2024 but Dr. Jain was not deposed until April 23, 2025, where he asserted the theory that the bridge wore down the lower teeth for the first time. Further, Peed did not disclose an expert report. At Dr. Berman's deposition on May 7, 2025, he was asked why he rendered the opinion that the proposed treatment to the lower teeth was not causally related to the accident, to which Peed's counsel objected. The objection was asserted

---

[6] *See* D.I. 12, Appellant's Opening Br., Ex. B at 6 (Dr. Jain's testimony stated, "Alcohol can create a little bit of desiccation in the mouth, but it would be to the entire mouth, not just on the top like Claimant's mouth. Even if Claimant drank twenty beers, there is no desiccation from alcohol in his bottom teeth.").

10

on the basis that Dr. Berman's testimony went beyond the four corners of his report. The objection was renewed at the 2025 hearing and the Board noted the objection for the record. Essential highlights that there is no Board rule requiring disclosure of a medical report where a claimant is seeking dental treatment rather than compensation for permanent injuries. Likewise, there is no Board rule that prohibited Dr. Berman from responding to Dr. Jain's testimony.

Finally, Essential alleges that the Board was correct in its decision to accept Dr. Berman's testimony over Dr. Jain's. Essential discusses how Dr. Jain's testimony was inconsistent by describing the wear on Peed's lower teeth as both gradual and rapid. Essential states that Dr. Jain was unsure why Peed's lower teeth wore out more quickly from the upper bridge than in other patients. Dr. Jain relied on a photograph taken by Dr. Berman in 2024 to support his theory that the upper bridge wore down Peed's lower teeth. Essential argues that this use of the photograph was factually inaccurate since the photograph was taken after Dr. Jain had already performed root canals, which required the grinding down of the lower teeth.

Essential further claims that the Board's decision to reject Dr. Jain's testimony and accept Dr. Berman's was supported by substantial evidence. Essential raises points regarding Peed's wife's testimony showing pre-existing evidence of decay in his lower teeth that resulted in several extractions prior to the accident in 2012.

11

Essential highlights that both experts agreed that the lower teeth were not injured from the accident. Essential argues that there is no evidence that justified Dr. Jain performing root canals on Peed's lower teeth. Essential states that Dr. Jain was inaccurate in his description of Peed's condition, relied on Dr. Berman's photograph, and even relied on his own dental work as proof.

## C.    Peed's Response

In response to Essential's arguments, Peed first clarifies that he is not alleging that the legal issues in the 2025 decision were identical to the 2018 decision. Rather, he argues that the Board was bound to its factual findings from 2018 in its 2025 decision. Peed specifically claims that the Board was bound to the following factual findings from 2018:

(1) Claimant's coma and intubation contributed to the desiccation of his teeth, which can lead to problems years later;
(2) Claimant's dental treatment, which included placement of an upper bridge (row of crowns) in 2018, was reasonable, necessary, and causally related to the work accident;
(3) Claimant took proper care of his teeth before the accident;
(4) Claimant received no dental care while intubated and in a coma;
(5) Since the accident, claimant's dental hygiene has been inconsistent because of his traumatic brain injury; and
(6) Claimant's lower teeth were healthy and intact at the time of the 2018 decision.[7]

Peed claims that these factual findings served as the predicate for how the accident caused dental issues years later. Peed states that the Board contradicted these

---

[7] D.I. 14, Appellant's Reply Br. at 2.

findings in its 2025 decision. Peed argues that the Board's contradictory findings go against the law of the case.

Peed states that Essential's argument that the claims in the 2018 and 2025 decisions are separate and distinct is merely a distraction from the main issue. Peed states that although the treatment for the teeth would be different, the underlying factual predicate involving Peed's teeth is the same. Peed argues that the 2018 findings serve as a baseline for the issues with his teeth and cannot be rewritten unless there is a change in law or new evidence.

Peed highlights again how Dr. Berman went beyond the scope of his report during his deposition. For example, Dr. Berman opined that Dr. Jain should have made a night guard for Peed, Dr. Berman's personal coma experience informed his desiccation views, and Dr. Berman stated that he had never seen what happened to Peed in his fifty-five years of experience. Peed alleges that the Board's failure to rule on his objection to this testimony deprived him of a definitive ruling and the right to confront Dr. Berman or rebut his opinion.

## STANDARD OF REVIEW

This court has appellate jurisdiction under 29 *Del. C.* § 10142 over final decisions made by an agency.[8] "The review of an Industrial Accident Board's

---

[8] *Foodliner v. Hidinger*, 2025 WL 2795866, at *5 (Del. Super. Ct. Sept. 30, 2025)(quoting *Quality Assured Inc. v. David*, 2022 WL 17442738, at *3 (Del. Super. Ct. Dec. 6, 2022)).

decision is limited to an examination of the record for errors of law and a determination of whether substantial evidence exists to support the Board's findings of fact and conclusions of law."[9] Substantial evidence includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," or "more than a scintilla but less than a preponderance of the evidence."[10] This court will not act as the trier of fact, weigh evidence, determine credibility, or make factual findings and conclusions.[11] Rather, this court "must give deference to the experience and specialized competence of the Board and must take into account the purposes of the Worker's Compensation Act."[12]

The record is to be viewed in the "light most favorable to the prevailing party below."[13] If there is an error of law, this court will review "the Board's legal conclusions *de novo* for errors in formulating or applying legal precepts."[14] "Absent error of law, the standard of review for a Board's decision is abuse of discretion."[15] The Board abuses its discretion when its decision exceeds "the bounds of reason of the circumstances," or ignores "rules of law or practice as to produce injustice."[16]

---

[9] *Stanley v. Kraft Foods, Inc.*, 2008 WL 2410212, at *2 (Del. Super. Ct. Mar. 24, 2008)(citing *Histed v. E.I. duPont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993)).
[10] *Foodliner*, 2025 WL 2795866, at *6.
[11] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).
[12] *Foodliner*, 2025 WL 2795866, at *6.
[13] *Id.*
[14] *Id.* at *5.
[15] *Stanley*, 2008 WL 2410212, at *2.
[16] *Foodliner*, 2025 WL 2795866, at *5.

DISCUSSION

**A.    The Board's 2025 Decision Neither Conflicts With, Nor Is Barred by its 2018 Decision.**

<u>1. The Law of the Case Doctrine Does Not Apply.</u>

"The law of the case is established when a specific legal principle is applied to an issue presented by facts which remain constant throughout the subsequent course of the same litigation."[17] For the doctrine to apply, the issue resolved in the prior decision must be the same as the issue resolved in the later decision.[18] "It is a self-imposed restriction that prohibits courts from revisiting issues previously decided," and is typically utilized to promote efficiency and respect for the judicial system.[19] It is not an absolute bar where a prior decision was "clearly wrong, produces an unjust result or should be revisited because of changed circumstances."[20]

Under 19 *Del. C.* § 2347, "[o]n application of any party in interest on the ground that the incapacity of the injured employee has subsequently terminated, increased, diminished, or recurred . . . the Board may at any time . . . review any agreement or award."[21] This language shows that although the Board may compensate a party, "it is not an adjudication as to the claimant's future condition

---

[17] *Washington v. Del. Transit Corp.*, 226 A.3d 202, 212 (Del. 2020).
[18] *Id.* at 212-13.
[19] *Id.* at 212.
[20] *Cede & Co. v. Technicolor, Inc.*, 884 A.2d 26, 39 (Del. 2005).
[21] 19 *Del. C.* § 2347.

and does not preclude subsequent awards or subsequent modifications of the original award."[22] It is, thus, "within the Board's discretion to interpret its own rulings."[23]

Here, the issue before the Board in the 2025 decision was the condition and treatment of Peed's lower teeth. It was alleged that these teeth had been ground down and worn out due to friction caused by the bridge installed on Peed's upper teeth years before. The 2018 decision involved the need for that treatment on Peed's upper teeth. Although Peed argued that the Board abandoned its findings from the 2018 decision, those findings were made in determining if the fracturing of the upper teeth at the gum line were causally related to the accident.[24] The only decision in 2018 regarding his lower teeth, which came from Dr. Jain's testimony, was that Peed's "lower teeth did not experience the trauma and have not had any of the nerve exposures or fractures as the top teeth."[25] This was further affirmed in the 2025 decision where both experts agreed that the lower teeth were not injured in the accident.[26]

---

[22] *Sheppard v. Allen Fam. Foods*, 279 A.3d 816, 826-27 (Del. 2022)(quoting *Shively v. Allied Sys., Ltd.*, 2010 WL 537734, at *10 (Del. Super. Ct. Feb. 9, 2010)).

[23] *Goldsborough v. New Castle Cty.*, 2011 WL 51736, at *6 (Del. Super. Ct. Jan. 5, 2011).

[24] D.I. 12, Appellant's Opening Br. at 7 (Peed specifically argued that the following findings were abandoned: "(1) dental trauma may manifest years after injury; (2) Mr. Peed's coma and intubation following the 2012 work accident caused the desiccation of his teeth, making delayed fractures foreseeable; and (3) Mr. Peed's bottom teeth were in good condition at the time of the 2018 Decision.").

[25] D.I. 12, Appellant's Opening Br., Ex. B at 13.

[26] D.I. 12, Appellant's Opening Br., Ex. A at 14.

16

The issue resolved in the 2018 decision was not the same as the issue resolved in the 2025 decision. The decisions involved treatment to different teeth needing dental work under different circumstances. Thus, the Board did not err in coming to different conclusions regarding Peed's lower teeth.

2. Neither *Res Judicata*, nor Collateral Estoppel Bars the Board's 2025 Findings.

Peed similarly argues that the Board's findings in 2025 were barred by *res judicata* and collateral estoppel.[27] *Res judicata* acts to bar a subsequent suit based on the same cause of action as a prior suit where the same parties are involved.[28] Again, 19 *Del. C.* § 2347 gives the Board the authority to review previous awards and ultimately "excludes the applicability of the concept of *res judicata*."[29] If *res judicata* were to apply, the 2018 decision must have resolved the same issue as the 2025 decision.[30] Since, as found above, the issues resolved were different, *res judicata* does not bar the Board's 2025 decision.

Similarly, collateral estoppel bars "relitigation of an issue of fact where a court or administrative agency necessarily has determined that same issue in the prior matter and the subsequent matter involves a party to the first case."[31] To determine if collateral estoppel applies, the court must consider whether:

---

[27] Peed did not raise collateral estoppel in his opening brief, but after Essential analyzed it in its answering brief, Peed added it to his reply brief.

[28] *Atkinson v. Del. Curative Workshop*, 1999 WL 743447, at *2 (Del. Super. Ct. May 19, 1999).

[29] *Id.* (emphasis added).

[30] *Washington*, 226 A.3d at 212-13.

[31] *State v. Calder*, 2019 WL 5381918, at *3 (Del. Super. Ct. Oct. 16, 2019).

17

> (1) The issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[32]

The issue before the Board in 2025 was not identical to the issue in 2018. Furthermore, the opportunity to fully litigate the issue of the lower teeth did not occur in the 2018 decision since those teeth were generally in good health at the time of that decision, showing no need for argument on their condition. As Essential notes, to apply such a broad finding on three of Peed's upper teeth in 2018 to all his teeth would cause Essential to "be forever responsible for payment of all of Claimant's dental treatment for the remainder of his life."[33] Thus, collateral estoppel also does not bar the Board's 2025 decision.

## B. The Board's Decision was Supported by Substantial Evidence.

A decision by this Board will be upheld unless there was no substantial evidence to support it.[34] The Board can adopt the testimony of one expert over another.[35] Where such testimony is adopted, it "will constitute substantial evidence for purposes of appellate review."[36] This is unless such testimony is based on

---

[32] *Betts v. Townsends, Inc.*, 765 A.2d 531, 535 (Del. 2000)(quoting *State v. Machin*, 642 A.2d 1235, 1239 (Del. Super. Ct. Aug. 2, 1993)).
[33] D.I. 13, Appellee's Answering Br. at 12.
[34] *Person-Gaines v. Pepco Holdings, LLC*, 981 A.2d 1159, 1161 (Del. 2009).
[35] *Id.*
[36] *Id.*

speculation or possibilities and is the only evidence upon which the Board bases its decision.[37] Likewise, if the decision is based on medical testimony which was grounded in "incorrect legal or scientific theory or upon facts or inferences themselves not supported by evidence, or was self-contradictory," it will not stand.[38]

In reviewing the record, this court finds that substantial evidence supported the Board's 2025 decision. The Board had the discretion to choose Dr. Berman's testimony over Dr. Jain's. The Board found Dr. Berman's testimony to be more persuasive since it was consistent with the facts of the case and Peed's condition overall.

The Board explained why Dr. Jain's testimony was not persuasive. The Board pointed out that Dr. Jain did not recommend any preventative measures to Peed, even though Dr. Jain testified he had seen Peed approximately twenty-five times between 2018 and 2023 and that the deterioration to the lower teeth was gradual. The Board reasoned that Dr. Jain's testimony was inconsistent and unreliable since he also described the deterioration of the lower teeth as rapid. The Board highlighted how Dr. Jain relied on Dr. Berman's photograph taken in 2024 to support his argument that the upper bridge caused wear to the lower teeth. The Board

---

[37] *Revello v. Acme Markets, Inc.*, 1986 WL 2261 *2 (Del. Super. Ct. Jan. 31, 1986)(finding that a doctor's admission in his testimony that one of his conclusions was merely based on his thirty year experience in treating similar employees and not on the basis of tests or observations of the claimant were solely based on conjecture and speculation).
[38] *Id.*

emphasized that the photograph was taken after Dr. Jain performed the root canals to the lower teeth, which required him to grind the teeth down to the gumline. The Board was not bound to Dr. Jain's testimony in all subsequent or future hearings after finding his testimony persuasive in 2018 and, if it was, its decisions would have been very one-sided.[39]

If Dr. Berman's testimony was based merely on experience without having evaluated Peed,[40] or if the Board solely relied on testimony from a prior decision where the issues before it were different, there would be a lack of substantial evidence.[41] This was not the case, however, in that the Board, after evaluating the credibility of the experts' testimonies, weighing the factual findings, and reviewing the evidence, decided that Dr. Berman's testimony was more persuasive. For these reasons, the record demonstrates that the Board had substantial evidence to form its decision.

**C.    The Board Properly Noted Peed's Objection on the Record as Requested.**

Administrative agencies have a less formal process than the courts of law.[42] The Board can disregard "customary rules of evidence and legal procedures so long as such a disregard does not amount to an abuse of its discretion."[43] The Board's

---

[39] *Shively v. Allied Sys., Ltd.*, 2010 WL 537734, at *10 (Del. Super. Ct. Feb. 9, 2010).
[40] *See Revello*, 1986 WL 2261, at *2 (Del. Super. Ct. Jan. 31, 1986).
[41] *See Washington*, 226 A.3d at 210.
[42] *Zayas*, 273 A.3d at 785.
[43] *Id.* (citing 19 *Del. Admin. C.* § 1331-14.3).

decision will not be reversed if it fails to "make evidentiary decisions as if the litigation had occurred in this Court."[44]

Under 19 *Del. Admin. C.* § 1331-9.3.4, a medical report is only required where a claimant seeks compensation for permanent injuries.[45] Unless it is made a requirement in the parties' pre-trial memorandum, which has not been provided or included in the record here, none of the Board's rules require a medical report to be disclosed in this type of situation.[46] For use in the hearing before the Board, parties may obtain expert witness testimony by oral deposition and such witnesses may be examined regarding anything relevant to the subject matter of the action.[47]

Here, Peed raised a standing objection during Dr. Berman's deposition.[48] During the 2025 hearing, Peed again raised the objection that was preserved in the deposition by informing the Board of the rationale behind it and stating he wanted to make note of it on the record for appeal purposes.[49] The objection was a challenge

---

[44] *Harasika v. State*, 2013 WL 1411233, at *6 (Del. Super. Ct. Feb. 28, 2013).
[45] *Fountain v. McDonald's*, 2016 WL 3742773, at *7 (Del. Super. Ct. June 30, 2016)(referencing Board Rule 9(B)(5)(d) which is now 19 *Del. Admin. C.* § 1331-9.3.4).
[46] *Id.*
[47] 19 *Del. Admin. C.* § 1331-10.1, 1331-10.6.
[48] D.I. 12, Appellant's Opening Br., Ex. G at 16:7-17 ("My objection . . . is that the doctor is testifying beyond the four corners of his report with respect to the basis for his opinion on why there is no causal relationship . . . I will take a standing objection . . .[b]ut it is something we are going to have to have the Board address.").
[49] D.I. 12, Appellant's Opening Br., Ex. D at 63:1-25-64:1 ("Specifically, I just want to note this for the record for any appeal purposes, but there was an objection that was made . . . [j]ust for record purposes I'd like to just hand a copy of the report so you have that and the Board can make the decision that he wants to.").

to the admissibility of Dr. Berman's testimony on the grounds that it did not fall within the four corners of his report. The response to the objection was as follows:

> [Essential's Counsel]: And so we don't believe the objection should be sustained, but if we're just making it for the record, that's fine.
> Hearing Officer: All right. Is there anything else?
> [Peed's Counsel]: I have nothing more to add.
> Hearing Officer: Then. And is there any objection to the report?
> [Essential's Counsel]: No.
> Hearing Officer: Okay. Then your objection is noted for the report – for the record and I'll mark Dr. Berman's report as Claimant's Exhibit 2.[50]

It appears from the record that the Board properly noted the objection, as requested by Peed, and proceeded in hearing Dr. Berman's testimony. This court finds that the Board did not abuse its discretion in doing so. Dr. Berman's medical report was not a required disclosure as compensation sought was not for a permanent injury. His opinions beyond the content of his report were in response to the new information learned after Dr. Jain's deposition. Peed was able to cross-examine Dr. Berman at his deposition as well. Under the Board rules, Dr. Berman could be examined on anything relevant to the subject matter such as questions related to if the lower teeth deterioration was related to trauma, desiccation resulting from the coma, and Dr. Jain's theories. Therefore, the Board did not abuse its discretion by noting the objection for the record and allowing Dr. Berman's testimony.

---

[50] *Id.* at 64:23-25-65:1-10.

22

## CONCLUSION

For these reasons, the Industrial Accident Board's decision to deny compensation for treatment to Peed's lower teeth is **AFFIRMED**.

**IT IS SO ORDERED.**